IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-924-O |
| | § | |
| AFS/IBEX FINANCIAL SERVICES, INC., | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the following:

1.  Plaintiff/Counter-Defendant Great American Insurance Company's Motion for Summary Judgment ("Pl's Mot") (Doc. # 27), filed April 28, 2008;

2.  Plaintiff's Brief/Memorandum in Support of its Motion for Summary Judgment ("Pl's Bf.") (Doc. # 28), filed April 28, 2008;

3.  Plaintiff's Appendix in Support of its Motion for Summary Judgment ("Pl's Appx.") (Doc. # 29), filed April 28, 2008.

4.  Defendant/Counter-Plaintiff AFS/IBEX Financial Services Inc.'s Response to Plaintiff's Motion for Summary Judgment ("Def's Resp.") (Doc. # 43), filed June 11, 2008;

5.  Defendant's Appendix in Support of its Motion for Summary Judgment ("Def's Appx. In Resp.") (Docs. # 44-51), filed June 11, 2008;

6.  Defendant's Brief/Memorandum in Support of its Response ("Def's Bf. In Resp.") (Doc. # 52), filed June 11, 2008;

7.  Defendant's Motion for Partial Summary Judgment ("Def's Mot.") (Doc. # 55), filed

June 18, 2008;

8.  Defendant's Brief/Memorandum in Support of its Motion ("Def's Bf. In Supp.") (Doc. # 56), filed June 18, 2008;

9.  Defendant's Appendix in Support of its Motion ("Def's Appx.") (Doc. # 57), filed June 18, 2008;

10.  Plaintiff's Reply Brief in Support of its Motion for Summary Judgment ("Pl's Reply") (Doc. # 61), filed June 25, 2008;

11.  Plaintiff's Response to Defendant's Motion for Partial Summary Judgment ("Pl's Resp.") (Doc. # 62), filed June 26, 2008;

12.  Plaintiff's Brief/Memorandum in Support of its Response to Defendant's Motion for Partial Summary Judgment ("Pl's Bf. In Resp.") (Doc. # 63), filed June 26, 2008; and

13.  Defendant's Reply in Support of its Motion for Partial Summary Judgment ("Def's Reply") (Doc. # 66), filed June 30, 2008;

14.  Defendant's Supplement Supporting its Motion for Partial Summary Judgment ("Def's Supp.") (Doc. # 92) (attaching Def's Appx. pgs 299-323), filed July 15, 2008; and

15.  Plaintiff's Reply to Defendant's Supplement ("Pl's Reply to Supp.") (Doc. # 93), filed July 15, 2008.

Having reviewed the pleadings, the evidence, and the applicable law, the Court finds that Plaintiff's motion for summary judgment should be and is hereby **GRANTED in part** and **DENIED in part**.  The Court further finds that Defendant's motion for partial summary judgment should be and is hereby **GRANTED in part** and **DENIED in part**.

I.      Background

        This case involves an insurance coverage dispute.  Great American Insurance Company

("Plaintiff"), seeks a declaratory judgment that crime insurance policies issued to AFS/IBEX

Financial Services, Inc. ("Defendant") do not provide coverage for losses stemming from checks

issued by Defendant payable to Charles McMahon Insurance Agency.  *See* Doc. No. 1 (3:07-CV-

924-O) (N.D. Tex. May 23, 2007) (Plaintiff's Complaint).  Defendant contends that the

insurance policies purchased from Plaintiff provide coverage, and seeks to recover under its

counterclaim for breach of contract, fraud, misrepresentation, and for violations of the Texas

Insurance Code and Prompt Payment statute.  *See* Doc. No. 17 (3:07-CV-924-O) (N.D. Tex. Jan.

31, 2008) (Def's Amended Answer & Counterclaim).

        The basic facts relating to the losses sustained by Defendant are not in dispute.

Defendant provides premium financing in the insurance industry.  Pl's Appx. at 158; Def's

Appx. at 16, 69, 306.  This service is useful because many insurance carriers require the entire

policy premium be paid up front and do not offer payment plans.  Pl's Appx. at 159; Def's Appx.

at 17, 69, 306.  In connection with this business, Defendant entered into an agreement with

Charles Owen McMahon, Sr. ("McMahon Sr.") who owns the Charlie McMahon Insurance

Agency.  Pl's Appx. at 159; Def's Appx. at 17.  This agreement contemplated that McMahon Sr.

would create and sign premium finance applications on behalf of insureds.  Pl's Appx. at 23-26,

159; Def's Appx. at 17.  Defendant would then send a check to the insurance company for the

purchase price of the insurance, and the insureds would send regular payments to Defendant.

Pl's Appx. at 159; Def's Appx. at 17.

        McMahon Sr.'s son, Charles Owen McMahon, Jr. ("McMahon Jr.") was an insurance

agent and owner of McMahon Insurance Services.  Pl's Appx. at 2, 158-59.; Def's Appx. at 17-18.  McMahon Jr. worked in an office adjoining the offices of McMahon Sr.'s agency.  Pl's Appx. at 13, 158-59; Def's Appx. at 17-18,  302.   McMahon Jr. was also the office manager at McMahon Sr.'s agency, and had responsibility for submitting applications for premium financing to Defendant under his father's contract with Defendant.  Pl's Appx. at 3, 17, 159; Def's Appx. at 17.  McMahon Jr. exploited this business relationship by submitting approximately 122 false applications to get Defendant to issue checks for the premium financing. Pl's Appx. at 3, 159-160; Def's Appx. at 17-18.  Defendant issued 127 checks as a result, made payable to "Charles McMahon Insurance Agency."[1]  Pl's Appx. at 5, 27-157, 428-29; Def's Appx. at 18, 70, 91-231.   McMahon Jr. endorsed these checks "Charles McMahon Insurance Agency" and deposited the funds into his own personal bank account.[2]  Pl's Appx. at 5, 8-9, 27-157, 420, 429; Def's Appx. at 5-6, 18 .

McMahon Sr. was aware his son had responsibility for submitting applications to Defendant, but was not aware that his son submitted fraudulent applications.  Pl's Appx. at 8-10, 160; Def's Appx. at 18, 306-07, 313, 315.   McMahon Sr. allowed McMahon Jr. to endorse checks payable to the agency and to write checks out of the agency's account for legitimate business purposes.  Pl's Appx. at 17-18, 416-17; Def's Appx. at 305-06, 313, 315-16.  However,

---

[1]  The Court notes that the McMahon Sr.'s company is named the *Charlie* McMahon Insurance Agency.  However, there is no separate entity called Charles McMahon Insurance Agency, and it was understood by all parties that Charles McMahon Insurance Agency meant Charlie McMahon Insurance Agency.  Pl's Appx. at 5-6, 10-11.

[2]  The Court notes that eight checks out of the 127 issued were endorsed by McMahon Sr.'s assistant at the direction of McMahon Jr. while McMahon Jr. was on vacation.  Pl's Appx. at 8-9; Def's Appx. at 311.  In addition, one check was endorsed McMahon Insurance Services because McMahon Jr. was in a hurry and mistakenly signed his own company's name.  Pl's Appx. at 9; Def's Appx. at 9, 30a-m.

McMahon Sr. did not give his son permission to commit a crime, including endorsing "Charles McMahon Insurance Agency" on the fraudulently-obtained checks at issue in this case. Def's Appx. at 307-08, 310 (Depo. of McMahon Sr. stating that he did not authorized McMahon Jr. to endorse checks on behalf of the company for illegitimate purposes). McMahon Sr. intended that his son would endorse checks only for legal business purposes. Def's Appx. at 310. McMahon Sr. did not personally benefit from his son's theft. Def's Appx. at 310-12.

Defendant submitted a claim to Plaintiff for $519,110.58 under the forgery coverage of Policy Number SAA 268-75-98-03 ("SAA policy") for loss beginning in or about July 2005 and discovered by Defendant in or about June 2006. Pl's Appx. at 418, 424. Defendant provided notice to Plaintiff on June 30, 2006, and a sworn proof of loss was received by Plaintiff on April 9, 2007. Pl's Appx. at 418. Plaintiff denied Defendant's claim, finding no coverage under the forgery provision of the SAA policy. Def's Appx. at 70. On May 23, 3007, Plaintiff filed this action asking the Court to declare that it has no duty to provide coverage to Defendant for its loss. Doc. No. 1 (3:07-CV-924-O) (N.D. Tex. May 23, 2007) (Plaintiff's Complaint). Defendant argues that coverage exists under the SAA policy, as well as under the policy in effect prior to the SAA policy, Policy No. CRP 268-75-98-02 ("CRP policy"). *See* Doc. No. 17 (3:07-CV-924-O) (N.D. Tex. Jan. 31, 2008) (Def's Amended Answer & Counterclaim). Defendant also seeks to recover under its counterclaim for breach of contract, fraud, misrepresentation, and for violations of the Texas Insurance Code and Prompt Payment statute. *Id.*

On April 28, 2008, Plaintiff filed its motion for summary judgment, arguing that dismissal is appropriate because neither insurance policy provides coverage for Defendant's claims. On June 18, 2008, Defendant filed its Motion for Partial Summary Judgment, asking the

Court to find in its favor on its breach of contract and prompt payment claims. These issues have been briefed by the parties and this matter is now ripe for determination.

II.     Standard of Review

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to

articulate the precise manner in which that evidence supports his claim.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  Summary judgment in favor of the Defendant is proper if, after adequate time for discovery, the Plaintiff fails to establish the existence of an element essential to her case and to which she will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant.  *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).  The court cannot make a credibility determination in light of conflicting evidence or competing inferences.  *Anderson*, 477 U.S. at 255.  As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied.  *Id.* at 250.

III.    Objections to Summary Judgment Evidence

As an initial matter, the Court will address Plaintiff's objections to some of the evidence presented by Defendant.  Specifically, Plaintiff objects to the submission of the affidavit of Edward Gallagher and documents attached thereto, referred to as "Exhibit K."  *See* Pl's Resp. at 9; Def's Appx. at 72-87.  In his affidavit, Edward Gallagher asserts that he is general counsel of The Surety & Fidelity Association of America ("SFAA"), formerly known as The Surety Association of America ("SAA") and that the documents attached to his affidavit are true and authentic copies of records kept in the regular course of business by the SFAA.  Def's Appx. at 72-73.  These records concern revision of the SFAA/SAA's forgery provision.  *Id.* at 74-87.

Plaintiff objects to the Court's consideration of this evidence because it constitutes

extrinsic evidence regarding the interpretation of a contract and is therefore inadmissible. Pl's Mot. at 9. Defendant replies that while parole evidence is not admissible to create an ambiguity, the contract may be read in light of surrounding circumstances to determine whether an ambiguity exists. Def's Reply at 2. Defendant argues that evidence of drafter's intent is relevant as such a surrounding circumstance. *Id.*

The Court finds that Defendant's Exhibit K is parole evidence inadmissible for the purpose of demonstrating the intention of the parties with respect to the definition of forgery to the extent the definition is unambiguous under Texas rules of construction. *See Gulf Metals Indus., Inc. v. Chicago Ins. Co.*, 993 S.W.2d 800, 807 (Tex. App.—Austin 1999, pet. denied) (noting that the circumstances surrounding promulgation of the pollution exclusion of a liability policy, i.e., its drafting history, could not be considered to create a latent ambiguity). The Court finds that such drafting history speaks to the parties intent and is not a "surrounding circumstance" properly considered during interpretation of the insurance policies at issue. See *id.*

IV.     Analysis

Plaintiff argues that summary judgment is appropriate because there is no genuine issue of material fact that no coverage exists for Defendant's claims. Pl's Mot. at 1. First, Plaintiff contends that the SAA policy is the only policy Defendant can look to for coverage due to a "cancellation of prior insurance" provision. Pl's Bf. at 16. Next, Plaintiff asserts that no provision of the SAA policy provides coverage for Defendant's claims. Pl's Bf. at 20-36. Specifically, Plaintiff states that the facts presented here do not involve a "forgery" as this term is defined in the policy, and that the "theft," "computer fraud," and "fund transfer" provisions of

the SAA policy are also inapplicable.  *Id.*  Plaintiff alternatively argues that in the event the

Court finds the CRP Policy applies, there is no coverage under this policy either.  *Id.*

Defendant contends that it can look to both the SAA and CRP policies for coverage.

Defendant argues that the "cancellation of prior insurance" provision of the SAA policy operates

to end the CRP policy period, but does not negate coverage for losses sustained before this end

date.  Def's Bf. In Supp. at 22-23.   Defendant also argues that coverage exists under both the

SAA and CRP policies because McMahon Jr.'s actions were forgeries under either policy, and

because coverage exists under the theft provisions of these policies as well.  *Id.* at 12-29.

The Court will first address whether Defendant can look only the SAA policy for

coverage or whether the CRP policy is also available.  The Court will also consider the proper

construction of the definition of forgery under the SAA policy.  The Court will then address

whether there is a genuine issue of fact as to coverage under the relevant policy or policies.

## A.     Rules of Construction for Insurance Contracts

The issues presented here require the Court to interpret language within SAA and CRP

insurance policies.  Generally, a contract of insurance is subject to the same rules of construction

as other contracts.  *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  In

interpreting an insurance contract, terms are given their plain, ordinary meaning unless the

policy itself shows that the parties intended the terms to have a different, technical meaning.

*DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999); *Puckett v. U.S. Fires

Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).  When terms are defined in an insurance policy,

those definitions control.  *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.

1997).  The Court is to interpret the contract as a whole, giving effect to each part.  *Balandran v.*

*Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). If the policy terms are susceptible to only one reasonable construction, the terms are enforced as written. *Puckett*, 678 S.W.2d at 938. However, if an insurance contract is ambiguous, the Court construes the contract in favor of the insured. *Barnett*, 723 S.W.2d at 665; *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996) (applying Texas law). Where an exclusionary clause is subject to two or more reasonable interpretations, the Court must adopt the construction urged by an insured as long as the construction is reasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa. v. Hudson Energy Co.,* Inc., 811 S.W.2d 552, 555 (Tex. 1991); *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).

**B.      Proper Construction of the "Cancellation of Prior Insurance" Provision**

Plaintiff argues that the CRP policy is not available as an avenue of recovery due to the "cancellation of prior insurance" provision of the SAA Policy. Pl's Bf. at 16. Plaintiff contends that once the SAA policy came into effect, the parties intended that the SAA policy be the only policy that could be looked to for coverage even for losses sustained during the CRP policy period. *Id.* at 16-20. Defendant responds that the this provision operates to end the policy period under the prior insurance contract and to prevent cumulative coverage, but does not rescind coverage with respect to a loss sustained during the CRP policy as though the policy never existed. Def's Bf. In Supp. at 22-23.

The "(c)ancellation of prior insurance" provision states that "(b)y acceptance of this policy you give us notice cancelling your prior policy No. CRP 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." Pl's Appx. at 440; Def's Appx. at 20. Applying Texas rules of construction, the Court finds that the

"cancellation of prior insurance" provision is ambiguous. While this provision identifies the CRP policy as the policy being cancelled, the policy does not define "cancel" or "cancellation," leaving open the possibility that cancellation has a retroactive as well as prospective effect.

Review of the SAA policy as a whole does not resolve this ambiguity. For example, policy conditions regarding "cancellation" suggest that cancellation ends coverage prospectively, but do not specifically rule out the possibility that coverage for losses sustained during the prior policy is somehow barred by cancellation.[3] The Court concludes after consideration of SAA policy as a whole, the term "cancellation" is subject to more than one reasonable interpretation, and therefore the "cancellation of prior insurance" provision of the SAA policy is ambiguous.

Plaintiff argues that the SAA policy's definition of occurrence demonstrates that the parties intended that the CRP policy no longer be available for coverage. Pl's Bf. at 19. Plaintiff states that an "occurrence" within the scope of coverage of the SAA policy includes acts or losses occurring during the prior insurance policy period, indicating that the SAA policy applies even if an act occurred before the SAA policy took effect. *Id.*

Under the SAA policy's forgery insuring agreement, "occurrence" means "all loss or losses caused by any person or in which that person is involved, whether the loss involves one or more instruments." *See* Def's Appx. at 239. The Court finds that while the definition of "occurrence" under the SAA policy may prevent cumulation of policy limits, it does not unequivocally demonstrate that the parties intended that the CRP policy become entirely irrelevant by renewal of the policy. *See* Def's Appx. at 20 (indicating the SAA policy is a

---

[3] The conditions state that "(n)otice of cancellation will state the effective date of cancellation" and that the "policy period will end on that date." Pl's Appx. at 450-51. The conditions also state that the policy can be cancelled by the insured or by Plaintiff, and that if Plaintiff cancels the policy, Defendant will receive a pro rata refund. *Id.*

renewal of the CRP policy).

Plaintiff also argues that the fact that the SAA does not contain a provision detailing how the insurer will handle payment of a loss covered under the current policy and prior insurance demonstrates that the CRP policy is irrelevant here. Pl's Bf. at 18. The CRP policy contains such a provision, entitled "Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate."[4] Pl's Appx. at 484. However, the CRP policy also has a "cancellation of prior insurance" identical to the one in the SAA policy. Pl's Appx. at 480. If the "cancellation of prior insurance" provision of the CRP policy had the effect urged by Plaintiff, the "Loss Covered Under this and Prior Insurance" provision in that policy would be meaningless, undermining Plaintiff's argument.

Having found little guidance within the contract itself, the Court considers the plain meaning of "cancellation" in interpreting the "cancellation of prior insurance" provision. "Cancellation," as used in a general legal context may mean voiding of an obligation as though it never existed, or it may also refer to eliminating obligations prospectively. *9029 Gateway S. Joint Venture v. Eller Media Co.*, 159 S.W.3d 183 (Tex. App.— El Paso 2004, no pet.) (noting that cancellation is a formal annulment or rendering of an instrument ineffective as a legal obligation); *Black's Law Dictionary* (3rd ed. 2004) (second definition, stating that "cancellation" is an annulment or termination of a promise or an obligation). In the insurance context,

---

[4] *See* Pl's Appx. at 484 (CRP policy provision entitled "Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate" provides that "(i)f any loss is covered: (a) partly by this insurance; and (b) partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest; the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance" and that "(r)egardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.").

"cancellation" has been treated in some jurisdictions as a term of art that specifically refers to abrogation of so much of an insurance contract as remains unperformed. *Gulf Coast Inv. Corp. v. Sec. of Hous. and Urban Dev.*, 509 F.Supp. 1321, 1325 n.15 (D.C. La. 1980); *Struve Enterprises, Inc. v. Travelers Ins. Co. Neb.*, 500 N.W.2d 580, 583 (Neb. 1993); *Reserve Ins. Co. v. Duckett*, 214 A.2d 754, 758 (Md. 1965); *Erie Ins. Exch. v. Lake*, 671 A.2d 681, 683-86 (Pa. 1996) (distinguishing between rescission of an insurance policy, where remedy is retroactive in that rights and obligations of the parties are abrogated as if the policy had never been issued, and cancellation of insurance, which is prospective and terminates the rights and obligations of the parties in the future); *Ingrassia v. Med. Malpractice Ins. Ass'n*, 161 A.D.2d 685, 686-87 (N.Y. 1990) (noting that courts disfavor rescission of insurance policies *ab initio* upon a recognition that there is a public interest at stake that exceeds the interest of the parties to the contract); *Crowley v. Lafayette Life Ins. Co.*, 683 P.2d 854,858 (Idaho 1984) (rejecting argument that termination provisions for an insurance policy entitled party to retroactively terminate the policy); *see also* Williston on Contracts, *Contracts of Insurance- Cancellation or Surrender of Policy* § 49:129 (stating that cancellation of an insurance policy involves an ending of the agreement prior to the stated expiration date by the act of one of the parties, and is an abrogation of that part of the contract that remains unperformed). However, Texas law has not specifically defined "cancellation" of an insurance policy as a term of art having only prospective effect. Accordingly, after considering the plain meaning of cancellation, the Court finds the "cancellation of prior insurance" provision of the SAA policy is ambiguous.

Plaintiff also argues that *Spartan Iron & Metal Corp. v. Liberty Ins. Co.*, 6 Fed. Appx. 176 (4th Cir. 2001), demonstrates that the "cancellation of prior insurance" provision means that

the SAA policy is the only policy that can be looked to for coverage even for losses sustained during the CRP policy. Pl's Bf. at 16-17. In *Spartan*, the Fourth Circuit addressed whether an insured could recover a total of $200,000 under two successive one-year policies, each with a policy limit of $100,000, where an employee stole in excess of $100,000 during each of the policy years in question. *Spartan Iron & Metal Corp.*, 6 Fed. Appx. at 177. The Court held that the insured could recover $200,000 because the policies in question were independent policies rather than continuous policies. *Id.* at 178-181. The Court specifically noted that a "cancellation of prior insurance" provision did not operate to limit liability because the provision did not specify the policy number of the prior insurance being cancelled. *Id.* at 180. Plaintiff argues that here the cancellation of prior insurance provision specifically identifies the CRP policy, and therefore there can be no recovery under that policy. Pl's Bf. at 17.

The Court does not find that *Spartan* demonstrates that the SAA policy is the only insurance contract Defendant can look to for recovery. In *Spartan*, the Fourth Circuit addressed whether policies were continuous or independent policies such that coverage for a single occurrence was limited and not cumulative. Similarly, in *Diamond Transp. Sys., Inc. v. Travelers Indem. Co.,* 817 F.Supp. 710 (N.D. Ill. 1993), discussed in *Spartan*, a district court addressed the effect of a cancellation of prior insurance clause where the insured had three successive one-year policies with an insurer, each policy with a limit of $250,000. While the insured's loss was over $750,000, the court limited the amount recovered to $250,000. *Id.* at 712. However, of the three one-year policies (1989-90, 1990-91, and 1991-92), the insurance company paid under the 1990-91 policy, denying any coverage on the first and last policies. *Id.* at 711. The court held that the insurer's liability was limited to $250,000 because there was one

14

"occurrence." *Id.* at 712. The Court did not hold that only the 1991-92 policy was in effect by virtue of the cancellation of prior insurance provision, and instead noted that since each policy contained this clause, only one bond remained in effect *at any given time*. *Id.* Thus, the Court finds that existing case law does not cure the ambiguity of the "cancellation of prior insurance" provision.

Having found the "cancellation of prior insurance" provision ambiguous, the Court construes this contract provision in favor of the Defendant insured. *See Barnett v. Aetna Lif Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987); *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701; *Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa.,* Inc., 811 S.W.2d 552, 555 (Tex. 1991). Where an exclusionary clause is subject to two or more reasonable interpretations, the Court must adopt the construction urged by an insured as long as the construction is reasonable. *Glover*, 545 S.W.2d at 761. Accordingly, the Court holds that, as urged by Defendant, the "cancellation of prior insurance" clause operates to end the policy period under the CRP policy, but does not rescind the agreement with respect to a loss sustained during the prior policy as though the policy never existed.

## C.     Proper Construction of definition of "forgery" under SAA policy

The SAA policy defines forgery as "the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose." Def's Appx. at 239. The parties disagree over the proper construction of the language excluding from the definition of forgery signatures consisting in whole or in part of one's own name. Plaintiff claims this exclusionary language, properly construed, bars coverage here because

Charles Owen McMahon, Jr. endorsed checks "Charles McMahon Insurance Agency."  Pl's Bf. at 20-24.  Plaintiff contends that because "Charles McMahon" is part of the endorsement and also the endorser's name, the endorsements at issue in this case are not forgeries under the SAA policy.  *Id.* at 22.  Defendant contends that the definition excludes endorsements where the endorser signs his or her own true name to a document, but does not exclude situations where an endorser signs the name of another.  Def's Bf. In Supp. at 15.

The Court finds that the construction of the definition of forgery urged by Plaintiff yields unreasonable and absurd results.  Under such an interpretation, there would be no forgery and therefore no coverage when an endorser shares any part of the name he or she is signing, even though the endorser purports to be another for a deceitful purpose.  For example, under Plaintiff's construction, if a person named Bob Smith stole Bob Jones' checkbook and endorsed a check "Bob Jones," there would be no coverage because "Bob" was part of the endorsement and also part of the endorser's name.  The Court finds that a construction resulting in such arbitrary coverage is unreasonable, and is not likely to reflect the true intentions of the parties at the time the insurance contract was entered into.

Considering the legal context in which this insurance contract was drafted, it is clear that the exclusionary language operates to bar coverage in situations where one signs his or her own true name.  The definition of forgery varies from jurisdiction to jurisdiction, and in some jurisdictions this definition includes situations where an agent signs a principal's name in addition to signing his or her own name as an agent.  *See Int'l Union Bank v. Nat'l Sur. Co.*, 245 NY 368, 370-73 (N.Y. 1927) noting that in New York it has been repeatedly held that one may commit forgery by the use of one's own name, if that name is used with intent to deceive);

*Schramm v. Metro. Cas. Ins. Co.*, 231 N.Y.S. 554 (N.Y. App. Div. 1928) (court found forgery where corporation's president endorsed a check with his own name but was not authorized to sign on behalf of the corporation). In fact, all of the cases Plaintiff cites in support of its construction involve situations where a party signed his or her own name (sometimes in addition to signing the name of another) in a false assertion of agency. See *Lusitania Savs. Bank, FSB v. Progressive Cas. Ins. Co.*, 328 F.Supp. 2d 514 (D.N.J. 2004) (where endorser signed a check with a company name and her own true name); *Reliance Ins. Co. v. First Liberty Bank*, 927 F.Supp. 448 (N.D. Ga. 1996) (where Ernest Yates endorsed a document "Knight's Furniture Company, Inc. and Ernest J. Yates, Its Attorney"); *Alpine State Bank v. Ohio Casualty Insurance Co.*, 941 F.2d 554 (7th Cir. 1991) (where checks were endorsed with a rubber stamp with company's name and deposit slips contained endorser's own name). Considering these surrounding circumstances, the Court finds that the definition of forgery is not ambiguous and operates to bar coverage where an endorser signs his own true name in whole or in part.

**D.    Coverage under Forgery/Alteration Insuring Agreements**

**1. Comparison of the SAA and CRP policies' Forgery Insuring Agreements**

Defendant seeks coverage under the Forgery/Alteration Insuring Agreements of the SAA and CRP policies for losses stemming from McMahon Jr.'s fraud on Defendant. Def's Bf. In Supp. at 14-29. Plaintiff denies that the facts of this case involve a forgery under the SAA or CRP policies. Pl's Bf. at 20-31.

The Forgery/Alteration provisions of the SAA and CRP policies are substantially similar with respect to the coverage for forgery. *See* Def's Appx. at 20-26, 27-29. Both policies provide that Plaintiff will pay for loss resulting directly from forgery or alteration of checks, drafts,

promissory notes, or similar written promises, orders or directions to pay a sum certain in money that are: (1) made or drawn by or drawn upon Defendant; (2) made or drawn by one acting as Defendant's agent; or that are purported to have been so made or drawn. *Id.*

However, these policies differ in that the SAA specifically defines forgery, while the CRP policy does not. Def's Appx. at 23, 27-29. Under the SAA, a forgery exists where one signs "the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose." Def's Appx. at 23. When terms are defined in an insurance policy, those definitions control. *Trinity Universal Ins. Co.*, 945 S.W.2d at 823.

In contrast, the word "forgery" in the CRP policy shall be deemed to have been used in its general and popular sense. *See First Nat. Bank of Lancaster v. Glens Falls Ins. Co.*, 329 S.W.2d 115, 116-17 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.) (noting that "forgery" should be used in its general sense rather than with specific reference to some statutory definition). Generally, a forgery is committed where a person signs or endorses a writing purporting to be the act of another, without the other authorizing the act, with intent to defraud or harm another. *See Oldham v. State*, 5 S.W.3d 840 (Tex. App.—Houston[14th Dist.] 1999, pet. ref'd); *Sales v. State*, 628 S.W.2d 796, 797-98 (Tex. Crim. App. 1982). "Another" includes all persons, real or fictitious except the person engaged in the forgery. *Smith v. State*, 379 S.W.2d 326, 328 (Tex. Crim. App. 1964).

The Court finds that when the SAA definition is properly construed, any differences in the definitions of forgery under the SAA and CRP policies are not material to the determination

of whether there is coverage in this case.[5]  While there may be circumstances in which differences between the SAA and CRP policies forgery coverage are material, these circumstances are not relevant to resolution of the issues relating to forgery presented in the parties' motions for summary judgment.  Accordingly, the Court will address coverage for forgery under these policies in a single discussion, rather than discussing coverage under each policy in turn.  The Court notes that when the SAA definition of forgery is properly construed, all of the parties' arguments apply to coverage under both policies. *See generally* Pl's Bf., Def's Bf.

### 2.        Coverage under the Forgery  Provisions of the SAA and CRP Policies

Under Texas law, an insured bears the burden of showing that its claim is potentially within a policy's coverage, and the insurer bears the burden of establishing that an exclusion in the policy constitutes avoidance of or an affirmative defense to coverage.  *Canutillo Indep. Sch. Dist*, 99 F.3d at 701.  Here, Plaintiff and Defendant both move for summary judgment as to coverage under the forgery provisions of the SAA and CRP.  *See generally* Pl's Bf; Def's Bf. In Supp.  Thus, the Court will determine whether there is a genuine issue of material fact that the losses sustained are covered by the Forgery/Alteration Insuring Agreement of the SAA and CRP, which state that Plaintiff will pay for loss resulting directly from forgery or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in

---

[5]  Plaintiff states that the key reason there is no coverage under the SAA policy is because there is no forgery where the endorsement contains all or part of the name of the signer, and here the checks in question were made payable to "Charles McMahon Insurance Agency" and were endorsed by Charles McMahon.  However, when properly construed, the exclusionary language in the definition of forgery does not bar coverage here because the uncontroverted evidence establishes that McMahon Jr. forged the name of his father's agency and was not signing his own true name.  Def's Appx. at 4-5.

money that are: (1) made or drawn by or drawn upon Defendant; (2) made or drawn by one acting as Defendant's agent; or that are purported to have been so made or drawn. *See* Def's Appx. at 20-26, 27-29.

The uncontroverted evidence demonstrates that McMahon Jr. exploited his father's business relationship with Defendant by submitting false applications to get Defendant to issue checks for the premium financing. Pl's Appx. at 3, 159-160; Def's Appx. at 17-18. Defendant issued 127 checks as a result, made payable to "Charles McMahon Insurance Agency." Pl's Appx. at 5, 27-157, 428-29; Def's Appx. at 18, 70, 91-231. McMahon Jr. endorsed these checks "Charles McMahon Insurance Agency" and deposited the funds into his own personal bank account. Pl's Appx. at 5, 8-9, 27-157, 420, 429; Def's Appx. at 5-6, 18. The parties have also presented evidence that McMahon Jr. endorsed these checks with the intent to steal Defendant's money so that he could pay off his gambling debts. Pl's Appx. at 9; Def's Appx. at 18.

The Court finds that there is no genuine issue of material fact that Defendant's claim falls within a policy's coverage. There is no issue of fact that McMahon Jr. had the relevant intent to deceive at the time he endorsed the name of his father's agency on the checks at issue. Pl's Appx. at 9; Def's Appx. at 18. In addition, since a check was the instrument McMahon, Jr. forged, this is the type of forgery for which the Forgery/Alteration Insuring Agreement of the SAA provides coverage.

Plaintiff argues that there was no forgery here because McMahon Jr. was an agent for Charlie McMahon Insurance Agency with general authority to endorse checks payable to his father's agency. Pl's Bf. at 23-29. Defendant contends that coverage exists because, while McMahon Jr. had permission to endorse checks payable to the agency for legitimate purposes,

McMahon Sr. did not authorize McMahon Jr. to sign the agency name to endorse the checks *at issue in this case* or to otherwise commit crimes as agent. Def's Bf. In Supp. at 25-29.

The uncontroverted evidence demonstrates that McMahon Jr. was a general agent for Charlie McMahon Insurance Agency, and had authority to endorse checks payable to his father's agency and to write checks out of the agency's account for legitimate business purposes. Pl's Appx. at 17-18, 416-17; Def's Appx. at 305-06, 313, 315-16. However, there is no evidence before the Court raising an issue as to whether McMahon Sr. gave his son permission to commit a crime, including endorsing "Charles McMahon Insurance Agency" on the checks at issue in this case. *See* Def's Appx. at 310-312. The uncontroverted evidence shows that McMahon Sr. had no knowledge of his son's criminal actions at issue in this case. Pl's Appx. at 8-10, 160; Def's Appx. at 18, 307-08, 310.

Under Texas law, it is a defense to forgery that one had authority from the payee to endorse a check or that he or she had a good faith belief that he or she had such authority. *See U.S. v. Lewis*, 592 F.2d 1282, 1285 (5th Cir. 1979). However, an endorsement is not authorized by a principal if the person signing either (1) had no authority whatsoever to endorse negotiable instruments for the named payee or (2) had some authority to endorse for the named payee but exceeded the scope of his endorsement authority. *Citibank Texas, N.A. v. Progressive Cas. Ins. Co.*, 522 F.3d 591 (5th Cir. 2008) (applying Tex. law).[6] Thus, McMahon Jr. did not engage in forgery under the SAA policy if he had actual authority to endorse "Charles McMahon Insurance Agency" on the checks at issue in this case. However, if McMahon Jr. exceeded the scope of his

---

[6] While the SAA definition of forgery does not specifically require the signature of another be unauthorized, it requires an intent to deceive, and such an intention implies a lack of authority to sign another's name.

authority, his endorsements were unauthorized and constitute forgeries. *See 1ˢᵗ Coppell Bank v. Smith*, 742 S.W.2d 454, 460 (Tex. App.—Dallas 1987, no writ) (rev'd on other grounds) (although evidence was presented that parents had let son sign their names on other occasions, testimony that the son's signing of his parent's names on a particular occasion were not authorized supported trial court's finding that deed was forged); *Yeager v. U.S.*, 32 F.2d 402 (D.C. Cir. 1929) (forgery where agent was authorized to endorse name of company on checks for deposit, but instead endorsed checks and deposited into his own personal account); *State v. Richards*, 906 P.2d 222 (Mont. 1995) (receptionist had authority to endorse company's name on checks for deposit, but committed forgery when she endorsed company's name in order to cash checks for her own use); *Territory v. Leslie Forrest*, 27 Haw. 209 (Haw. 1923) (defendant exceeded scope of authority to sign checks and withdrawal slips by signing employer's name to check for personal gain).

Actual authority denotes authority a principal: (1) intentionally confers upon an agent; (2) intentionally allows the agent to believe he had; or (3) by want of ordinary care allows the agent to reasonably believe him- or her-self to possess. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also* Restatement (Third) of Agency § 2.02 (2006). An agent's belief must be grounded in a manifestation of the principal, including but not limited to the principal's written or spoken word. *Id*. cmt. c (2006). However, even if a principal's instructions or grant of authority to an agent leave room for an agent to exercise discretion, the consequences that a particular act will impose on the principal may call into question whether the principal has authorized the agent to do such acts. Three types of acts in particular have been identified that should lead a reasonable

agent to believe the principal does not intend to authorize the agent to do the act: (1) crimes and torts; (2) acts that do not confer a benefit upon the principal; and (3) acts that are otherwise legal that create legal consequences for a principal that are significant and separate from a transaction directed by the principal. *Id*. cmt. h. (2006).

The Court finds that the uncontroverted evidence establishes that McMahon Jr. lacked authority to endorse checks procured by fraud in the name of his father's agency. *See* Pl's Appx. at 5, 8-10, 27-157, 158-160, 420, 429; Def's Appx. at 5-6, 17-18, 306-315. While McMahon Jr. was an agent of his father's business with endorsement authority, the undisputed evidence shows that McMahon Jr. exceeded the scope of his endorsement authority. *Id.* McMahon Sr. was unaware of his son's fraud and did not receive any benefit from it. Pl's Appx. at 8-10, 160; Def's Appx. at 18, 306-07, 310-13, 315. There is no issue of fact that McMahon Sr. did not explicitly or implicitly authorize his son to sign "Charles McMahon Insurance Agency" for illegitimate purposes. *See* Pl's Appx. at 8-10, 158-160; Def's Appx. at 5-6, 17-18, 306-315. In addition, there is no genuine issue of fact that McMahon Jr. could not have reasonably believed he had permission to endorse his father's agency's name on checks procured by fraud to steal money from Defendants. Pl's Appx. at 8-10, 160; Def's Appx. at 18, 306-07(Depo. of McMahon Sr. stating that McMahon Jr. is in prison as a result of the actions that form the basis of Defendant's losses), 310-13, 315.

The Court also rejects Plaintiff's argument that *Citibank Texas, N.A. v. Progressive Cas. Ins. Co.*, 522 F.3d 591 (5th Cir. 2008) mandates a ruling in Plaintiff's favor. *See* Pl's Resp. at 15-18. In *Citibank*, Citibank sued Progressive Casualty Insurance Company to recovery under an insurance policy covering losses due to forgeries, counterfeiting, "unauthorized" signatures,

and other dishonest or fraudulent acts. *Citibank Tex., N.A.*, 522 F.3d at 592-93. The underlying

crime Citibank sought recovery for consisted of Todd Lindley, a partner of Golden Life LLP,

signing his *own name* on checks payable to Golden Life and depositing these checks into his

own personal account. *Id.* The Fifth Circuit reversed the district court's finding of forgery,

noting that the court applied the definitions of "unauthorized endorsement" found in the Texas

Business & Commercial Code, when the more restrictive definition within the policy itself

should have been applied. *Id.* at 595-96. The policy defined an "unauthorized endorsement" as

an "endorsement not reflected on the appropriate signature card or named in the Insured's

records for the account or accounts in question." *Id.* at 595. Since Lindley was listed by name in

Citibank's records for GoldenLife's accounts and was also listed on signature cards for

GoldenLife's accounts with Citibank, the Fifth Circuit held that even though Lindley exceeded

his endorsement authority, he was an authorized endorser under the language of the insurance

policy Citibank entered into with Progressive. *Id.* at 595-597. The Court noted that

"unauthorized endorsements" under the policy were limited to non-forgery endorsements (those

in which the person signing is the person whose named is signed). *Id.* at 596.

    In this case, McMahon Jr. signed the name of his father's agency, not his own true name,

in excess of his endorsement authority and the SAA and CRP policies do not contain restrictive

language comparable to the bond in *Citibank*. The Court is not bound to find in favor of Plaintiff

under the decision in *Citibank*.

    Plaintiff also argues that there was no forgery here because McMahon Sr. "held out"

McMahon Jr. as a general agent for the business, creating apparent authority. Pl's Resp. at 11.

Apparent authority is based on estoppel arising from the conduct of the principal communicated

to a third party, and relates to whether the principal can be bound by an agent's actions. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Here, the Court is not determining whether McMahon Sr. is liable to a third party. Accordingly, apparent authority is irrelevant to the determination of whether McMahon Jr. engaged in forgery when endorsing the checks at issue in this case.[7]

The Court finds that there is no genuine issue of material fact that Defendant is entitled to coverage for its losses in connection with McMahon Jr.'s forgery. The undisputed evidence demonstrates that Defendant's claims are within the coverage of the SAA and CRP policies, and Plaintiff has failed to raise an issue of fact regarding any exclusion that would constitutes avoidance of or an affirmative defense to coverage. Accordingly, Plaintiff's Motion for Summary Judgment with respect to this issue is hereby **DENIED**, and Defendant's Motion for Partial Summary Judgment is **GRANTED**.

## E. Coverage Under "Inside the Premises/Theft" Insuring Agreements and Construction of the Theft by Trickery Exclusion

Defendant argues that coverage also exists for its losses pursuant to the "Inside the

---

[7] The Court notes that there are no facts bringing this case under the agency endorsement rule set out in *Gilbert v. U.S.*, 370 U.S. 650, as McMahon Jr. did not sign his own name or otherwise indicate he was signing as an agent for Charles McMahon Insurance Agency. *See U.S. v. Hunt*, 456 F.3d 1255 (10th Cir. 2006) (no forgery where defendant signed his own name and it was clear from four-corners of the check it had been endorsed by an agent); *U.S. v. Jaynes*, 75 F.3d 1493 (10th Cir. 1996) (forgery where granddaughter signed her own name and her grandmother's without authority and nothing on the face of the check suggested she signed as an agent); *U.S. v. Faust*, 850 F.2d 575 (9th Cir. 1988) (forgery where there was no indication defendant signed as an agent); *U.S. v. Gilbreath*, 452 F.2d 992, 993 (5th Cir. 1971) (upholding refusal to instruct jury regarding agency endorsement, noting that the Supreme Court has held that an endorsement by an individual in the name of the payee and then his own name, as agent, is not a forgery under 18 U.S.C. § 495, even if done without authority, although it may be a misrepresentation of an agency relationship); *Simms v. State*, 32 S.W.2d 852, 853 (Tex. Crim. App. 1930) (one signing another's name to a document along with his own name as agent is not guilty of forgery).

Premises/Theft" Insuring Agreements of the SAA and CRP policies.[8]  Def's Bf. In Supp. at 29.

As with the forgery provisions, the "Inside the Premises/Theft" coverage provided by the SAA

and CRP policies is similar for the purposes of this Court's inquiry, covering "loss of money and

securities inside the premises or banking premises resulting directly from theft, disappearance, or

destruction."  *See* Def's Appx. at 237, 279.   Defendant argues that because it sustained loss as a

result of theft, these losses are covered.  Def's Bf. In Supp. at 29.

Plaintiff responds that the "Theft by Trickery" exclusion operates to bar coverage here.

Pl's Bf. at 31-33.  This exclusion, entitled "Voluntary Parting of Title to or Possession of

Property" excludes coverage for loss resulting from Defendant, or anyone acting on Defendant's

express or implied authority, being induced by any dishonest act to part voluntarily with title to

or possession of any property.  Def's Appx. at 242, 280.  Plaintiff argues that this exclusion

applies here because McMahon's fraudulent submission of premium financing agreements duped

Defendant to send checks to McMahon Jr.  Pl's Bf. at 32.  Defendant argues that "money" is not

"property" within the scope of the "Theft by Trickery" exclusion, and therefore this exclusion

does not apply.  Def's Bf. In Supp. at 29.

The Court finds that, when looking at the SAA and CRP policies as a whole, the "Theft

by Trickery" exclusion applies where an insured voluntarily parts with title or possession to

money.  The SAA and CRP both define money as (a) currency, coins and bank notes in current

use and having a face value; and (b) travelers checks, register checks and money orders held for

sale to the public.  Def's Appx. at 239, 275.  In addition, these policies define "Other Property"

---

[8] The provision is called "Inside the Premises" in the SAA policy and referred to as "Theft" coverage within the CRP policy.  *See* Def's Appx. at 237, 279.

as property other than money and securities.  Def's Appx. at 239, 275.  The Court finds that the "Voluntary Parting of Title to or Possession of Property" exclusion applies to parting of title or possession of money.  Accordingly, the Court finds that while the uncontroverted evidence demonstrates that losses were caused by theft, Plaintiff has demonstrated that no issue of fact exists that the "Voluntary Parting of Title to or Possession of Property" exclusion operates here to exclude coverage under the "Inside the Premises/Theft" provisions of the SAA and CRP policies. Plaintiff's Motion for Summary Judgment with respect to this issue is hereby **GRANTED**, and Defendant's Motion for Partial Summary Judgment with respect to this issue is hereby **DENIED**.

**F.      Coverage Under Computer Fraud Provision**

Plaintiff moves for a summary judgment that Defendant's claims are not covered under the "Computer Fraud" insuring agreements of the SAA and CRP policies.  Pl's Bf. at 33. Plaintiff contends that the losses sustained do not bear a direct enough connection to the use of a computer to fall within the scope of the "Computer Fraud" provision.  *Id.*  Plaintiff argues that no computer actually caused the transfer of any funds from Defendant's bank account, and instead the loss was caused by checks with Mr. McMahon Jr. duped Defendant into issuing, endorsed, and deposited.  *Id.* at 33-36.  Thus, Plaintiff contends there would be no direct loss resulting from the use of a computer as required under the "Computer Fraud" provisions of the relevant policies.  *Id.*  Defendant has not presented any evidence or arguments in opposition to Plaintiff's assertion that the computer fraud provisions do not provide coverage for Defendant's losses.

The "Computer Fraud" provisions of the SAA and CRP polices provide coverage for any loss of, and loss from damage to, money, securities and other property resulting directly from the

use of any computer to fraudulently cause a transfer of that property from inside the premises or banking premises: (a) to a person (other than a messenger) outside those premises; or (b) to a place outside those premises.  Pl's Appx. at 445, 496.

The Court finds that there is no genuine issue of fact that the computer fraud provisions of the SAA and CRP do not provide coverage for Defendant's losses.  The language of these provisions indicate that they are designed to cover losses *directly* stemming from fraud perpetrated by use of a computer.  Defendant has failed to raise an issue of fact that a computer caused the transfer of any finds from Defendant's bank account.  Accordingly, Plaintiff's motion for summary judgment with respect to this issue is hereby **GRANTED.**

## G.        Coverage under Funds Transfer Fraud Provision

Plaintiff moves for a summary judgment that Defendant's claims are not covered by the "Funds Transfer Fraud" provision of the SAA and CRP policies.  Pl's Bf. at 36.  Defendant has not presented any arguments or evidence to contradict Plaintiff's assertions.

Coverage exists under these provisions for loss of funds resulting directly from a fraudulent instruction directing financial institution to transfer, pay or deliver funds from your transfer account.  *See*   Pl's Appx. at 460, 505a-506.  However, the definition of "fraudulent instruction" in the SAA and the definition of "wire funds transfer fraud" in the CRP specifically exclude instructions described in the Forgery/Alteration insuring agreement.  *Id.*  Accordingly, because Defendant's losses are caused by a forgery within the scope of the Forgery/Alteration provisions of the SAA and CRP policies, Defendant cannot recovery under the "Funds Transfer Fraud" provisions of these policies.  Accordingly, the Court finds that there is no genuine issue of fact that Defendant's claims are not covered by the "Funds Transfer Fraud" provisions of the

SAA or CRP policies.  Accordingly, Plaintiff's Motion for Summary Judgment with respect to this issue should be and is hereby **GRANTED**.

**H.      Attorney's Fees**

Plaintiff moves for summary judgment on Defendant's claim for attorney's fees under the SAA or CRP policies.  Plaintiff contends that such damages are precluded by the "Indirect Loss" and "Legal Expense" exclusions of the SAA and CRP policies.  Pl's Bf. at 37-39.  Plaintiff also states that Defendant is not entitled to attorney's fees because its losses are not covered by the SAA or CRP policies.  *Id.*  Defendant responds that it is not claiming that the insuring agreements require Plaintiff to pay its attorney fees.  Def's Bf. In Resp. at 30-31.  Instead, Defendant moves for summary judgment to recover fees and expenses as damages for Plaintiff's breach of the SAA and CRP policies.  Def's Bf. In Supp. at 29-30.

While the Court has declared the rights of the parties on the coverage issue raised by the declaratory judgment claim, Defendant's breach of contract claim is an issue that remains to be tried along with the claim alleging violations of the insurance code.  The Court therefore **DENIES** Plaintiff's Motion for Summary Judgment on the issue of attorney's fees **without prejudice**.  Such arguments can be raised under Rule 54(d) of the Federal Rules of Civil Procedure after trial.

**I.      Misrepresentation**

Plaintiff moves for summary judgment on Defendant's claim of misrepresentation.  Pl's Bf. at 40.  Defendant has also moved for summary judgment on its misrepresentation counterclaim, alleging that Plaintiff's prior representation that the SAA policy did not reduce Defendant's coverage is inconsistent with its interpretation of the forgery definition's

exclusionary language. Def's Bf. In Supp. at 30-31. However, Defendant states that if the Court decides that the SAA policy's definition of forgery does not eliminate coverage, Defendant will not have suffered damages caused by Plaintiff's misrepresentation and this claim would be moot. *Id.* at 31.

The Court has rejected the interpretation forgery definition's exclusionary language urged by Plaintiff and found that there is no meaningful distinction between the coverage afforded under the SAA policy or the CRP policy material to this case. Defendant conceded in its Motion for Partial Summary Judgment that if the Court were to so hold, Defendant's misrepresentation claim fails for lack of damages. Def's Bf. In Supp. at 30-31. Accordingly, the Court finds that there is no genuine issue of fact that Defendant cannot recover on its misrepresentation claim. *See Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 873-74 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (damages are an essential element for a claim of misrepresentation). For these reasons, Plaintiff's Motion for Summary Judgment with respect to Defendant's misrepresentation claims is **GRANTED**.

## J.     Improper Claims Handling/ Prompt Payment

The parties moves for summary judgment on Defendant's extra-contractual improper claims handling claims. Pl's Bf. at 41; Def's Bf. In Supp. at 31. The Court finds that there are genuine issues of material fact with respect to Defendant's improper claims handling claims and that summary judgment is not appropriate. Accordingly, both Plaintiff's Motion for Summary Judgment and Defendant's Motion for Partial Summary Judgment are hereby **DENIED**.

## V.     Conclusion

Based on the foregoing reasons, the Court finds that there is no genuine issue of material

that Defendants can look to both the SAA and CRP policies for coverage.  In addition, properly construed, the definition of forgery under the SAA excludes coverage where one signs his or her own true name in whole or in part.  In addition, the Court finds that Defendant's losses fall within the scope of coverage provided by the Forgery/Alteration Insuring Agreements of the SAA and CRP policies.  The Court further finds that no coverage exists for Defendant's losses under the Inside the Premises/Theft, Computer Fraud, or Fraudulent Transfer provisions of these policies. Genuine issues of material fact remain with respect to attorney's fees and improper claims handling claims.

Accordingly, Plaintiff's Motion for Summary Judgment is hereby  **GRANTED in part** and **DENIED in part**; Defendant's Motion for Partial Summary Judgment is hereby **GRANTED in part** and **DENIED in part**.

**SO ORDERED** on this the **21**[st] day of **July, 2008**.

Reed O'Connor
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**