UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY | § § § | |
| vs. | § § § | CIVIL ACTION NO. 3:07-CV-0924-O-BF ECF |
| AFS/IBEX FINANCIAL SERVICES, INC. | § | |

**GREAT AMERICAN'S SUPPLEMENTAL BRIEF REGARDING
POST-DENIAL CONDUCT AND INFORMATION**

COMES NOW Great American Insurance Company ("Great American") to file this Supplemental Brief Regarding Post-Denial Conduct, and in support hereof, Great American respectfully states as follows:

**I.    Introduction**

At the July 24, 2008 pretrial hearing in this case, the court indicated that it is still considering whether to allow AFS to question Great American about its conduct and claim decisions made after this lawsuit was filed. As the only remaining issue(s) to be tried in this case involve AFS's extra-contractual (*i.e.*, bad faith) claims, it is clear that AFS wants to be able to question Great American's representatives about the information Great American learned after this suit was filed, as well as about Great American's coverage decisions based on this information obtained after the suit was filed.

In Great American's Reply to AFS's Response to Great American's Motion in Limine, Great American has already explained at length that bad faith under Texas law is determined at the time that a claim is denied. In this case, Great American denied AFS' claim on May 23, 2006 and on the same date it filed this declaratory judgment action. It was perfectly appropriate for Great American

to do so. "If a reasonable basis exists for questioning the insurance claim, the insurer may deny it and litigate the matter without also facing a bad faith claim." *Darby v. Jefferson Life Ins. Co.*, 998 S.W.2d 622, 626-627 (Tex.App.– Houston [1st Dist.] 1995, no pet.), citing *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 284 (Tex.App.--San Antonio 1992, writ denied); see also *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial.")

Despite the numerous cases which have held that an insurer's post-denial conduct, or information learned after a claim denial, is not relevant, AFS still seeks to question Great American at trial regarding its information and decisions after the claim was denied and this suit was filed. For this entire time period, Great American was represented by counsel and engaged in on ongoing lawsuit involving AFS. All of the post-denial information which AFS seeks to ask questions about was learned through discovery during the course of this suit. The new "claim" was made for the exact same conduct involved in the first claim, *i.e.* the fraud perpetrated by Charles McMahon, Jr. Moreover, the new "claim" was not made as part of the normal claim process, but was instead part of the litigation process, as it was contained in an Amended Complaint filed by AFS.

Great American's decisions during the litigation of this case were naturally based at least in part on consultations with its attorney, which of course touches upon the attorney-client privilege. It will be quite difficult for Great American to answer questions about its decisions during this time period without (most likely) stating that these decisions were based at least in part on the advice of its counsel. Great American has no desire to inject any advice-of-counsel arguments into this case, and certainly will not do so on its own, but this issue could easily come up at trial should AFS be allowed to ask Great American about its decisions made during the pendency of this case.

Thorny, complicated issues like this one are likely one reason that the Texas Supreme Court has ruled that under Texas law, an insurer's duty of good faith and fair dealing is determined at the time the insurer denied the claim. *Viles v. Security National Insurance Company*, 788 S.W.2d 566, 567 (Tex. 1990). Another, similar line of cases shows that an insurer's conduct during the litigation of a lawsuit is similarly inadmissible. These cases are discussed in the balance of this Brief.

II.   **Post-Litigation Conduct, Decisions and Information Learned by Great American is Not Admissible at Trial**

It is clear that AFS seeks to question Great American at trial about its post-litigation decisions and conduct, and possibly about the advice and/or decisions of its representative during this time (*i.e.*, its attorney) as well. In its Response to Great American's Motion in Limine, AFS states that "Great American's request [sic] the Court to exclude as irrelevant evidence concerning Great American's conduct (or that of its attorney) in denying the subsequent claim made by AFS/IBEX or coverage under CRP 268-75-98-02. Evidence of Great American's conduct is relevant to AFS/IBEX's extra-contractual claims. . ." AFS' Response to Great American's Motion in Limine, p. 2.

This argument is misplaced, as AFS should not be allowed to use Defendant's legitimate litigation decisions to support its claim of bad faith. The Tenth Circuit Court of Appeals made this quite clear in the case of *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335 (10th Cir. 1995). In that case, the court construed Oklahoma law and held that it was error to allow the jury to consider standard litigation procedures as evidence of bad faith. *Id.* At 340. The court stated as follows:

> Allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims. As a district court in this Circuit aptly noted, permitting allegations of litigation

> misconduct would have a 'chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law.' Insurers' counsel would be placed in an untenable position if legitimate litigation conduct could be used as evidence of bad faith. Where improper litigation conduct is at issue, generally the Federal Rules of Civil Procedure provide adequate means of redress, such as motions to strike, compel discovery, secure protective orders, or impose sanctions. In light of existing case law and the public policy concerns identified above, we hold that while evidence of an insurer's litigation conduct may, in some rare instances, be admissible on the issue of bad faith, such evidence will generally be inadmissible, as it lacks probative value and carries a high risk of prejudice.

*Timberlake*, 71 F.3d at 341 (citing Fed.R.Evid. 401, 403). In reaching its conclusion on this point, the Tenth Circuit relied on two points of law. First, it noted that under Oklahoma law, an insurer does not breach the duty of good faith "by refusing to pay a claim or by litigating a dispute with its insured if there is a legitimate dispute as to coverage." *Id.* at 340, citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir.1993). Second, the Tenth Circuit noted the Oklahoma Supreme Court's holding that "[t]he action of the [insurer] must be assessed in light of all facts known or knowable concerning the claim at the time [the insured] requested the [insurer] to perform its contractual obligation." *Timberlake* at 340, *citing Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla.1989). Since bad faith is examined based on the facts that exist when an insurer decides a claim, the Tenth Circuit held that an insurer's subsequent actions in a lawsuit should not be considered evidence in a bad faith claim.[1]

---

[1] Numerous other cases have reached the same result. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 520-521 (Ky.2006) ("Allowing evidence of litigation strategies and tactics would expose the insurer's entire defense in a coverage action to scrutiny by the jury, unless the insurer won the underlying suit. The jury then, with the assistance of hindsight, and without the assistance of insight into litigation techniques, could 'second guess the defendant's rationales for taking a particular course.'); *Palmer v. Farmers Ins. Exchange*, 261 Mont. 91, 861 P.2d 895, 915 (1993) (citations omitted) ("In general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage. . . . [O]nce litigation has

Texas law requires the same result, as Texas bad faith law includes both of the two principles that the Tenth Circuit relied on in *Timberlake*. "If a reasonable basis exists for questioning the insurance claim, the insurer may deny it and litigate the matter without also facing a bad faith claim." *Darby v. Jefferson Life Ins. Co.*, 998 S.W.2d 622, 626-627 (Tex.App.– Houston [1st Dist.] 1995, no pet.), citing *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 284 (Tex.App.--San Antonio 1992, writ denied); see also *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("an insurer will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial.")

An insurer breaches its duty of good faith and fair dealing by denying or delaying payment of a claim when "the insurer's liability has become reasonably clear." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997); id. at 69 (Hecht, J., concurring). The statutory standard and the common-law standard for breach of the duty of good faith and fair dealing are identical. *Mid-Century Ins. Co. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002) Texas law mirrors Oklahoma law, in that an

---

commenced, the actions taken in its defense are not . . . probative of whether [an insurer] in bad faith denied the contractual lawsuit."*); International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509, 1529 (D.Wyo.1994), aff'd, 52 F.3d 901 (permitting allegations of litigation misconduct would have a "chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law."); *Martin v. Travelers Indem. Co.*, 450 F.2d 542, 552 (5th Cir. 1971) ("Travelers' decision to dismiss its federal declaratory judgment action to determine coverage is not one which a federal district court, or this Court, is omniscient enough to scrutinize for improper motives," even though Travelers shifted the burden of proving coverage to the insured by the dismissal); *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160 (9th Cir. 1995) (holding that alleged evidence of bad faith after Allstate received advice of coverage counsel was irrelevant to insured's claim that Allstate had negotiated in bad faith prior to that date); *Totty v. Chubb Corp.*, 455 F.Supp.2d 376, 390 (W.D.Pa. 2006) (insurer was entitled to aggressively defense itself in litigation, as there was "no evidence that Defendant advanced this argument to evade its obligations under the policy as opposed to defend itself in the lawsuit Plaintiff filed against it.")

insurer's duty of good faith and fair dealing is determined at the time the insurer denied the claim. *Viles v. Security National Insurance Company*, 788 S.W.2d 566, 567 (Tex. 1990). Thus, under Texas law, an insurer's post-litigation conduct and decisions should be irrelevant and inadmissible.

The Tenth Circuit recently reconfirmed its opinion from *Timberlake* in the case of *Roesler v. TIG Insurance Company*, 251 Fed.Appx. 489, 2007 WL 2981366 (10th Cir. 2007). In that case, the insured sought to introduce evidence of the insurer's post-litigation conduct to show bad faith, including the facts that the insurer wrote a post-rescission reservation of rights letter, offered to reinstate the policy, and offered a tail policy. *Id.* at 498, *8. The Tenth Circuit noted that "these post-litigation activities have no relevance to TIG's alleged bad faith. *Id.*, citing *Hale v. A.G. Ins. Co.*, 138 P.3d 567, 571-72 (Okla.App. 2006) ("[T]he analysis in bad faith cases indicates the cutoff for relevant evidence is the date of payment or denial of a claim.") The Tenth Circuit noted that "The duty of good faith and fair dealing exists during the time the claim is being reviewed. Once a lawsuit is filed, to hold an insurer's acceptable litigation tactics as evidence of bad faith would be to deny the insurer a complete defense." *Id.*, citing *Timberlake*, 71 F.3d 335, 340) ("[s]uch evidence should rarely, if ever, be allowed to serve as proof of bad faith."). "[A]llowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims . . ." *Id.*, citing *Sims v. Travelers Ins. Co.*, 16 P.3d 468, 471 (Okla. Civ. App. 2000).

Other cases have reached similar results. *See, e.g., Premium Finance Co., Inc. v. Employers Reinsurance Corp.*, 761 F.Supp. 450 (W.D.La. 1991) ("Applying the [bad faith statute] under consideration to post-litigation activities would lead to an absurd result. The absurd result is to expose all litigation with insurers on the main demand to protracted collateral litigation concerning

the insurer's post-filing negotiations, as colored by attorney advice, issue development and court rulings.")

In short, because Texas measures an insurer's duty of good faith at the time a claim is denied, any post-litigation conduct or decisions by an insurer should be irrelevant. Failing to follow the clear Texas Supreme Court precedent on this issue, as stated in *Viles*, or looking to the date of a second denial for the same claim, would lead to absurd results. For an insured to be able to rely on litigation decisions as evidence of bad faith, all he would need to do would be to file another "claim" just prior to trial. The insurer would be forced to deny the claim, and then the insured would be able to rely on litigation decisions--which lawyers know are perfectly acceptable, but which jurors might see as bad faith--to support its claim for the breach of the duty of good faith and fair dealing. An insured would thus be able to do exactly what AFS seeks to do in this case: get the insurer on the witness stand and go through all the various discovery and depositions in the case, one by one, and ask the insurer why each new piece of information did not cause it to change its original coverage decision. Such a result robs an insurer of its right to litigate questionable coverage issues without facing a bad faith claim for doing do, and also violates clear Texas Supreme Court and Fifth Circuit precedent holding that bad faith is to be evaluated when a claim is originally denied. AFS' attempt to question Great American about its post-litigation decisions and the information it learned during the lawsuit should accordingly be denied.

Respectfully submitted,

    /S Russell J. Bowman
Russell J. Bowman
Texas State Bar No. 02751550
3131 McKinney Avenue, Suite 220
Dallas, Texas 75204

**GREAT AMERICAN'S SUPPLEMENTAL BRIEF REGARDING POST-DENIAL CONDUCT AND INFORMATION – PAGE 7**

                            (214) 922-0220
                            (214) 922-0225 (FAX)
                            ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

       This is to certify that on August 22, 2008, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Linda M. Dedman.

       I hereby certify that I have served a true and correct copy of the foregoing document by mailing a copy upon the following, as indicated below, on this the 22nd day of August, 2008:

Ms. Linda M. Dedman                             VIA HAND DELIVERY
Dedman & Handschuch
790 PREMIER PLACE
5910 North Central Expressway
Dallas, Texas 75206

                                       /S Russell J. Bowman
                                       Russell J. Bowman

       The Fifth Circuit follows Texas law on this issue, noting that "We must judge the insurer's actions against a standard of reasonableness as of the time of its challenged decision." *Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1359 (5th Cir. 1993).