UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY | § § § | |
| Plaintiff/Counter-Defendant | § | |
| vs. | § | CIVIL ACTION NO. 3-07CVO924-N |
| | § | ECF |
| | § | |
| AFS/IBEX FINANCIAL SERVICES, INC. | § | |
| Defendant/Counter-Plaintiff | § | |
| | § | |
| | § | |

---

**AFS/IBEX' BRIEF OPPOSING GREAT AMERICAN INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

---

Dated: March 16, 2011                    Respectfully submitted,

DEDMAN & HANDSCHUCH, PLLC
s/Linda Dedman
    Linda M. Dedman
    State Bar No. 24009078
    ldedman@coveragelawdallas.com
    Floyd Clardy, Of Counsel
    State Bar No. 04268010
    fclardy@sbcglobal.net
    12225 Greenville Ave., Ste. 202
    Dallas, Texas 75243
    (214) 361-8885 (telephone)
    (214) 363-4902 (facsimile)
ATTORNEYS FOR AFS/IBEX


**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2011, the foregoing document was served upon all counsel of record via the Courts notice of electronic filing that is automatically generated by ECF.


s/Linda M. Dedman

# TABLE OF CONTENTS

I.     SUMMARY ........................................................................................................ 1

II.    RELEVANT PROCEDURAL HISTORY ................................................. 3

III.   MATERIAL ISSUES OF FACT ................................................................ 5

   A.   Trial evidence showed that GAIC breached the Duty of Good Faith and Fair Dealing and committed at least four violations of the Texas Insurance Code Unfair Settlement Practices Act. ………………………………………………………………………………….5

     1.   The jury should have been asked if failed to pay a claim when it knew or should have known coverage was reasonably clear. ...................................................................... 5

     2.   The jury should have been asked if GAIC refused to pay a claim without conducting a reasonable investigation. .................................................................................... 6

     3.   The jury should have been asked if GAIC failed to promptly provide AFS a reasonable explanation of the factual and legal basis in the policy for its denial of the claim. ................ 8

     4.   A jury should have been allowed to decide whether GAIC failed to affirm or deny coverage within a reasonable time. ........................................................................... 9

   B.   Trial evidence showed that GAIC's Insurance Code Violations and breach of the duty of good faith and faith dealing were a substantial factor in AFS' incurring the Chase suit fees.... 9

     1.   The jury should have been asked if GAIC's failure to pay the claim when coverage was reasonably clear was a substantial factor in AFS incurring the Chase suit fees.............. 9

     2.   The jury should have been asked whether GAIC's refusal to pay the claim without conducting a reasonable investigation was a substantial factor in AFS incurring Chase suit fees. 10

IV.   ARUGMENTS AND AUTHORITIES ......................................................... 11

   A.   Summary Judgment/Directed Verdict Standard ............................................... 11

   B.   Elements of Common Law and Statutory Bad Faith ...................................... 12

   C.   No evidence of a Bone fide Coverage Dispute. ............................................. 15

   D.   Evidence shows that GAIC's Bad Faith Caused AFS to Incur the Chase Suit Fee's. ....... 18

     1.   The law of the case permits AFS to pursue recovery for its Chase suit fees. ............... 18

     2.   Texas law recognizes that a tort can support recovery of attorney fees as an element of consequential damages. .................................................................................... 20

   E.   Legal Challenges to Lost Profit Claims Fail. .................................................. 21

   F.   Other Claims. ................................................................................................... 22

V.    SUMMARY JUDGMENT IS INAPPRORIATE FOR AFS'S OTHER LIABILITY AND DAMAGE THEORIES ................................................................................. 23

   A.   Incomplete Request for Summary Judgment. .................................................. 23

   B.   Material issues of fact require a jury to decide liability and damages on AFS' unchallenged theories. ................................................................................................ 23

VI.   CONCLUSION ........................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development and Research Corp.,* 299 S.W.3d 106 (Tex. 2009) .......................................................................................... 21

*Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373 (5th Cir.2002) . 12

*Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.,* 298 S.W.3d 216 (Tex.App.--San Antonio 2009) ........................................................................................................... 22

*Brumfield v. Hollins,* 551 F.3d 322 (5th Cir.2008) ............................................................ 11

*Crosthwait Equipment Co., Inc. v. John Deere Co.,* 992 F.2d 525 (5th Cir. 1993) ................... 12

*Evans v. Pacific Nat. Fire Ins. Co.,* 367 S.W.2d 85 (Tex.Civ.App.1963) ................................ 14

*First Tex. Sav. Ass'n v. Reliance Ins. Co.* 950 F. 2d 1171 (5th Cir. 1992) ........................... 14

*Ford Motor Co. v. Ledesma,* 242 S.W.3d 32, 45-46 (Tex. 2007) .......................................... 14

*Great American Ins. Co. v. AFS/IBEX Financial Services, Inc.,* 612 F.3d 800 (5th Cir. 2010)…………………………………………………………………………………15, 20

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507 (Tex.1998) ............ 22

*Lincoln General Ins. Co. v. Reyna,* 401 F.3d 347 (5th Cir. 2005) ......................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ............................... 11

*Mo. Pac. RR. Co. v. American Statesman,* 552 S.W.2d 99 (Tex. 1977) .................................. 13

*Montes v. Pendergrass,* 61 S.W.3d 505 (Tex. App. – San Antonio 2001, no pet.) ..................... 13

*Parkans Int'l LLC v. Zurich Ins. Co.,* 299 F.3d 514 (5th Cir. 2002) .............................. 14, 20

*Pioneer Chlor Alkali Company, Inc. v. Royal Indemnity Company,* 879 S.W.2d 920 (Tex.App.-Hous. [14 Dist.] 1994) ................................................................................................ 16

*Pustejovsky v. Pliva, Inc.,* 623 F.3d 271 (5th Cir. 2010) .................................................... 11

*Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex. 1992). .................................................... 13

*Union Bankers Ins. Co. V. Shelton,* 889 S.W.2d 278 (Tex. 1994) ........................................ 12

*Universe Life Ins. Co. V. Giles,* 950 S.W.2d 48 (Tex. 1997) ......................................... 12, 15

**Statutes**

TEX. FIN. CODE ANN. § 304.102 (Vernon 2006) ........................................................... 22

Tex. Ins. Code §541.060(a)(1) ..................................................................................... 12

Texas Insurance Code § 541 ......................................................................................... 13

Texas Insurance Code 541.060 ..................................................................................... 23

**Rules**

FED. R. CIV. P. 56 (c) ................................................................................................. 14

Defendant/Counter-Plaintiff, AFS/IBEX Financial Services, Inc. ("AFS/IBEX"), files its Brief in Support of Response Opposing Great American Insurance Company ("GAIC") Motion for Summary Judgment, as follows:

## I.    SUMMARY

GAIC's motion for summary judgment should be denied, except for its request that the Court dismiss AFS' misrepresentation claim.

The following issues of material fact preclude summary judgment:

**1.  Did AFS fail to pay attempt in good faith to settle AFS claim when it knew or should have known coverage was reasonably clear?**  According to the Fifth Circuit "GAIC's interpretation of the SAA policy's exclusionary clause is unreasonable and leads to absurd results."[1]   Yet, the success of GAIC's "no evidence" challenge to the liability element of AFS' extra-contractual claims rests solely on GAIC's unsupported claim that coverage was not reasonably clear i.e. that this case involved a bona fide coverage dispute.   GAIC was more than simply wrong about coverage; it took an unreasonable position in denying a claim that was clearly covered.

**2.  Did AFS refuse to pay a claim without conducting a reasonable investigation?**  GAIC did not challenge the sufficiency of AFS liability evidence on this claim or whether the wrongful conduct caused AFS damages.

**3.  Did GAIC failure to promptly provide AFS a reasonable explanation of the factual and legal basis in the policy for its denial of the claim?**  GAIC did not challenge the sufficiency of AFS liability evidence on this claim or whether the wrongful conduct caused AFS damages.

.

**4.  Did GAIC fail to affirm or deny coverage within a reasonable time?**  GAIC did not

challenge the sufficiency of AFS liability evidence on this claim or whether the wrongful conduct caused AFS damages.

**5.   Was GAIC's failure to pay AFS' claim when coverage was reasonably clear a substantial factor is AFS incurring the Chase suit fees?**  GAIC cannot sustain its "no evidence of independent injury" challenge to the causation/damage elements of AFS' common law and statutory bad faith claims.  AFS submitted its claim in June of 2006 and the adjuster latched onto his idea that the policy's definition of forgery precluded coverage almost immediately.  His acts and omissions in the first few months he handled the claim made it clear to AFS that getting GAIC to pay its claim would be an arduous undertaking and were a substantial factor in AFS' suing Chase.

**6.   Were GAIC's other insurance code violations substantial factors in AFS incurring the Chase suit fees, losing profits or losing the value of employee time?**  (a)  GAIC's adjuster testified that he would have paid the claim if McMahon, Sr. had signed the forgery affidavits.  All the information in the affidavit was readily accessible to the adjuster.  Had GAIC acted in good faith it would have investigated and paid the claim and AFS would have recovered from the loss much more quickly.  The financial uncertainty of the Chase suit fees and the unpaid claim and the uncertainty about its risk allocation were a direct result of GAIC's wrongful conduct and a substantial AFS delayed expansion into new markets as a result of GAIC's failure to pay the claim when it knew, or should have known coverage was reasonably clear.  A jury should get decide if GAIC's bad faith was a substantial factor in AFS' lost profits.   (b)  Alternatively, if GAIC had been forthcoming about its unwillingness to pay the claim and its absurd justification, AFS would have initiated coverage litigation five to ten months sooner.  This delay in the resolution of the forgery loss issues caused AFS to lose profit from the markets it would have entered sooner but for the time it lost working

---

1 *Great American Ins. Co. v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800, 805 (5th Cir. 2010).

towards a resolution of the matter because of GAIC's bad information.  (c)  GAIC gave the insured

inadequate and misleading guidance in submitting the claim.  This resulted in AFS floundering

through the claim process.  AFS employee's spent hundreds of hours on futile efforts to prove its

claim.  To the extent GAIC's unfair settlement practices caused AFS to use its employee time

unnecessarily AFS seeks recovery.

## II.     RELEVANT PROCEDURAL HISTORY

GAIC denied coverage for AFS' forgery claim and simultaneously filed this suit as a

declaratory judgment action contending AFS' forgery losses were not covered.  App. 31-33; 45-46;

ECF No. 1.  AFS answered and filed statutory and common law bad faith counterclaims.  ECF No. 2.

 GAIC moved for summary judgment and AFS moved for partial summary judgment on the coverage

issue.  ECF No. 27 and 55.

This Court found forgery coverage for AFS' loss under consecutive GAIC commercial crime

policies.  ECF No. 95.  According to the Court, uncontroverted evidence established that McMahon,

Jr. lacked authority to endorse checks procured by fraud.  *Id.*  It also found that when he forged

"Charles McMahon Insurance Agency" McMahon, Jr. was not signing his own true name.  *Id.*  Based

on the favorable coverage decision the Court dismissed, as moot, AFS' misrepresentation claims.  *See*

ECF No. 136.  It found genuine issues of material fact, with respect to whether GAIC improperly

handled AFS's claim and the case then proceeded to a three day trial.  *Id.*  At the close of evidence,

GAIC moved for a directed verdict arguing that there was no evidence of bad faith and the there was

no evidence of GAIC's bad faith causing AFS damages apart from the breach of contract damages.

App. 58-66.  The District Court dismissed AFS' Texas Insurance Code and common law bad faith

claims, stating that, since AFS' damages all potentially flowed from GAIC's breach of its insurance

contract the same damages could not, as a matter of law, satisfy the damage element in AFS'

statutory bad faith claim.  *Id.*  Only AFS's breach of contract theory was submitted to the jury.  *Id.* at 66.  The jury found that AFS' incurred the Chase suit fees as the natural, probable and foreseeable result of GAIC's failure to pay its claim.  ECF No. 121.

GAIC appealed this Court's finding of coverage and the award of the Chase suit fees as consequential damages for AFS' breach of contract claim.  *See* ECF No. 121.  AFS appealed this Court's ruling that AFS' damages all potentially flowed from GAIC's breach of its insurance contract and that the same damages could not, as a matter of law, satisfy the damage element in its statutory and common law bad faith claim.  *See* ECF No. 143.  The Fifth Circuit Court of Appeals affirmed coverage, vacated the award of Chase suit fees as consequential damages for AFS' breach of contract claim, but stated that the Chase suit fees  "*may* provide the separate injury necessary to support AFS's claim that it is entitled to extra-contractual damages for GAIC's alleged bad faith and violations of the Texas Insurance Code."  *Great American Ins. Co. v. AFS/IBEX Financial Services, Inc.,* 612 F.3d 800, 805 (5th Cir. 2010). .  Because this Court "never opined on the merits of AFS's extra-contractual claims nor were they dismissed for lack of evidence that GAIC acted in bad faith or violated the Texas Insurance Code," the Fifth Circuit remanded this matter to this Court "to reconsider, in the first instance, whether there is any basis for AFS's extra-contractual claims."  *Id.*

The Fifth Circuit's Judgment Mandate (ECF No. 156) affirmed in part and vacated in part this Court's Amended Order of Judgment (ECF No. 146), and remanded the cause to this Court for further proceedings in accordance with its opinion.  It further ordered the costs on appeal to be taxed against GAIC.  *See* ECF No. 156.  AFS timely filed a motion to tax fees as costs with the Fifth Circuit.  *See* ECF No. 164 (a copy AFS' motion to tax fees as cost, which it re-filed in this Court).  The motion included a request for post trial and appellate fees.  The Fifth Circuit remanded AFS' motion to tax fees as costs to this Court.  ECF No. 158.

## III.    MATERIAL ISSUES OF FACT

**A.    Trial evidence showed that GAIC breached the Duty of Good Faith and Fair Dealing and committed at least four violations of the Texas Insurance Code Unfair Settlement Practices Act.**

1. <u>The jury should have been asked if failed to pay a claim when it knew or should have known coverage was reasonably clear.</u>

By July 21, 2006 GAIC knew

- McMahon, Sr.'s son, Charles McMahon, Jr. exploited his father's relationship with AFS and submitted applications for fake insurance policies.  App. 23; 25.
- Based on McMahon, Jr.'s fraudulent misrepresentations, AFS issued checks payable to "Charles McMahon Insurance Agency." App. 28; 34.
- McMahon, Jr. wrote the name "Charles McMahon Insurance Agency" as an endorsement on the checks and deposited them into his own bank account.  App. 28; 106.
- McMahon, Sr. did not authorize his son to take checks he tricked AFS into issuing payable to "Charles McMahon Insurance Agency" and deposit them into his own account.  *Id.*

By July 21, 2006 GAIC should have known

- McMahon, Jr. did not endorse any of the checks using his own signature—that is "Charles O. McMahon, Jr."
- McMahon, Jr. did not negotiate any of the checks using the "Charles McMahon Insurance Agency" account.
- McMahon, Jr. put the checks into his own account.

The jury saw and heard about the reasons GAIC gave for denying the claim

- July 18, 2006 letter (App. 29.)
- July 19, 2006 email  (App. 35.)
- July 21, 2006 email (App. 33-34) and
- May 23, 2007 denial and lawsuit. App. 54-56

The jury had a copy of both policies and it heard expert testimony that Searcy's coverage

position was absurd.  The jury heard Searcy testify about his absurd reading of the policy.

Q:    That's not Charles McMahon, Jr. 's name, is it? Or do you say that's Charles McMahon -- that's not his name?

A:      No, that's not his name. He's not Mr. Agency.
Q:      So he signed the name of his father's agency?
A:      Yeah.

App. 110.  The jury had sufficient evidence to conclude that as of July or August GAIC knew or

should have known that coverage was reasonably clear.

   2.   The jury should have been asked if GAIC refused to pay a claim without conducting a
        reasonable investigation.[2]

Between July 18 and July 21, 2006 Searcy wrote to the insured stating:

> We therefore do not see an "forgery" involved, based upon your faxed
> example.  If there is a better example or if you have additional corroborative proof of
> forgery, please provide it to us as soon as possible.
>
>                     *         *         *
>
> It appears from what we have learned from you so far, that there does not
> seem to be any coverage for your loss from either the Employee Dishonesty or
> Forgery or Alteration insuring agreements on your Crime Protection Policy.

App. 31.

> We regret that [sic] do not see case for forgery in what AFS/IBEX has shown us. …
> However, if AFS/IBEX, Inc. believes that their claim should be covered by this
> policy, please detail and demonstrate for us why this loss should be covered.

App. 33.  Based on the July 18, 2006 letter and July 19-21 emails, Jay Scheideman testified

that:

> If you read those letters, they had certainly set it up that they were going to deny it.
> As a businessman reading those letters, there is no doubt in our mind they were
> going to fight it.

 App. 89.

> There wasn't really a question inch [sic] my mind that they were going to not pay this
> claim or do everything they could not to pay it.

App. 91.  This evidence is sufficient for a jury to determine that in late July of 2006 GAIC was

refusing to pay the claim.  In addition to the evidence cited in III(A)(1) above, the jury had the

following evidence about the reasonableness of GAIC's investigation.   Expert testimony that a reasonable investigation would have included:

- Verifying how all the checks were endorsed. App. 120-1.
- Verifying that McMahon, Sr. did not authorize McMahon, Jr. to sign the checks.  App. 125; 127.
- Verifying that McMahon, Sr. did not benefit from the checks.  App. 132.
- Verifying that the account or the endorsement belonged to McMahon, Jr.— not to Charles McMahon Insurance Agency.  App. 120-1; 127.

Had he tried to conduct a reasonable investigation each of these steps should have been completed by July or August 2006.  App. 123-4; 133.  Searcy did not:

- Verify how all the checks were endorsed.  App. 95; 119.
- Verify that McMahon, Sr. did not authorize McMahon, Jr. to sign the checks.  App. 93; 119.
- Verify that McMahon, Sr. did not benefit from the checks.  App. 93; 138.
- Verify that the account or the endorsement belonged to McMahon, Jr.—not to Charles McMahon Insurance Agency.  App. 95; 135; 137.
- Conduct his own independent investigation into the facts of this occurrence outside of talking with the insured.  App. 117; 136.
- Contact anyone other than the insured and document the details of contact with one of those two, Don Rogers.  *Id.;* App. 118.
- He never bothered to contact the insureds attorney for information even though in his initial conversation with John Holsan he noted that McMahon, Jr. had confessed and saw AFS' attorney.  *Id.;* App. 97.
- He did not contact anyone from the agency that was involved in these transactions or make an effort to clarify who owned the agency or who the actual employees were.  App. 93; 121.
- He did not make any effort on his own to clarify who owned McMahon Insurance Services. App. 119; 137.
- He did not make any effort to identify or contact the legal authorities that were involved in prosecuting McMahon, Jr. other than to ask the insured for this information sometime later. App. 97.  He was later informed that McMahon, Jr. met with the postal inspector in August 2006.  App. 112.  He did not attempt to determine if any criminal charges had been filed or request copies of any reports concerning McMahon, Jr.'s activities.  App. 112; 135.
- He did not advise the insured what specific information he needed from them in order to make a decision on their claim.  App. 130.

---

2.  GAIC does not challenge the sufficiency of the evidence that its investigation was not reasonable.

- He did not check the prior policy even though he noted that the scheme started in October 2005. App. 21. He admitted that he could have inquired, but did not do so as there was no need. App. 97.
- He failed to initially request copies of all the checks even though he was aware that over a hundred checks were involved in the scheme. App. 24.

From this evidence a jury could conclude that GAIC refused to pay the claim without conducting

a reasonable investigation.

3. The jury should have been asked if GAIC failed to promptly provide AFS a reasonable explanation of the factual and legal basis in the policy for its denial of the claim.[3]

The jury had evidence of GAIC's July 18-21, 2006 coverage correspondence. In reference to

the July 18, 2006 coverage correspondence the jury heard expert testimony that GAIC failed to

explain the carrier's position with respect to why there was no coverage.

The jury also heard Jay Scheideman testify that he was unsure of whether the early claim

correspondence was an out right denial and that he could not really tell. App. 89.. In his July 18,

2006 letter Searcy stated that McMahon, Jr. "siphoned off money in some manner for his own

personal benefit." App. 30. The letter continues

> Our discussion then considered whether or not coverage for Forgery (or Alteration) on policy #SAA 268-75-98-03 might apply to your loss circumstances. You thought it might, and so we asked to see an example of a "forged instrument." The example you provided us is a copy of check #126903, drawn on the JP Morgan Chase Bank on behalf of AFS/IBEX Financial Services, Inc. The check appears to been endorsed by hand on the proper lines on the reverse of the check. The endorsement appears to be the same entity or payee that AFS/IBEX was intending to pay: "Charles McMahon Insurance Agency." While the hand-written endorsement is a little hard to read, the endorsement does not vary, from what one might expect to see from a small company cashing any business check. The policy defines "forgery:"
>
> **"Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for**

---

3.  AFS does not challenge the sufficiency of the evidence supporting this Texas Insurance Code violation.

any purpose." (SAA 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, form SP 0001, page 8 of 19)

We therefore do not see any "forgery" involved, based upon your faxed example.

*Id.* at 31.  A jury could conclude that this letter created the false impression that there was no forgery because McMahon, Jr. deposited the checks into the CMIA account and later siphoned off the money.  Moreover, on its face it fails to make clear the absurd interpretation of the policy that Searcy had already latched onto.  App. 30-32; 39-40.

    4.  <u>A jury should have been allowed to decide whether GAIC failed to affirm or deny coverage within a reasonable time</u>.[4]

The evidence listed in section III(A)(1)-(3) is sufficient to at least create a fact issue regarding whether GAIC should have affirmed or denied coverage by August of 2006.

**B.**    **Trial evidence showed that GAIC's Insurance Code Violations and breach of the duty of good faith and faith dealing were a substantial factor in AFS' incurring the Chase suit fees.**

    1.  <u>The jury should have been asked if GAIC's failure to pay the claim when coverage was reasonably clear was a substantial factor in AFS incurring the Chase suit fees.</u>

The jury heard evidence that as of late July or August of 2006 GAIC knew or should have known that coverage was reasonably clear.  *See* III(A)(1) above.  It also heard evidence that but for GAIC's failure to pay the claim AFS would not have filed the Chase suit.  App. 85.   The jury also heard the following cross examination exchange:

> Q:    Now, AFS decided to file that lawsuit of its own volition, correct?
> A:    Correct.
> Q:    This lawsuit here with Chase?
> A:    Yes. That's correct.
> Q:    And it wasn't because of anything Great American had done or not done; isn't that true?

---

4.  GAIC did not challenge the factual sufficiency of the evidence supporting AFS's claim that GAIC failed to affirm or deny coverage within a reasonable time.

A:    No, that's not true.
Q:    They hadn't denied your claim, had they?
A:    If you read those letters, they had certainly set it up that they were going to
      deny it. As a businessman reading those letters, there is no doubt in our mind
      they were going to fight it.

App. 88-89.  This evidence is sufficient to satisfy the "but for" prong of proximate cause.  The jury

could have conclude—and GAIC has not challenged—that GAIC could foresee that if its adjuster

failed to engage in good faith efforts to pay a claim when coverage was reasonably clear, its insured

would be forced to protect its interests.  Indeed, the evidence supports an inference that not only did

Searcy foresee that his acts would frustrate the insured to the point that AFS would give up on

coverage and pursue the claims recovery itself, his conduct gives rise to an inference that this was  his

desired result.  *See e.g.* discussion regarding failure to request from insured or record the very

information he claims would have supported a finding of coverage in sections above.

2.    <u>The jury should have been asked whether GAIC's refusal to pay the claim without conducting
      a reasonable investigation was a substantial factor in AFS incurring Chase suit fees.</u>

Searcy testified that if he had received executed forgery affidavits he would (or probably

would) have paid the claim. App. 100; 109; 113-114.  For each forged check, the forgery affidavit

required McMahon, Sr. to swear that:

- He did not write or authorize the signature "Charles McMahon Insurance Agency";
- the check was forged; and
- he did not receive the proceeds from the check.

App. 46.  Had Searcy conducted a reasonable investigation by July or August of 2006 he would have

known that:

- The checks at issue were payable to CMIA and endorsed by McMahon, jr. as
  follows:       "Charles McMahon Insurance Agency"
                        XXXXX440.  App. 28.
- The account number in the endorsement at issue belonged to McMahon, Jr.  App.
  76.
- McMahon, Sr. did not authorize McMahon, Jr. to sign the checks at issue.  App.

82.

- McMahon, Sr. did not benefit from the checks.  App. 75.

The information in the forgery affidavits was all available through a reasonable investigation, which could and should have been completed by July or August.  Searcy's testimony that the forgery affidavit would have convinced him to pay the claim and evidence that a reasonable investigation would have yielded the same information in the forgery affidavit creates a reasonable inference that conducting a reasonable investigation would have caused Searcy to pay the claim.  Based on this inference and the testimony that AFS would not have filed the Chase suit if GAIC had paid the claim a jury could determine that GAIC's failure to investigate was a substantial factor in AFS filing the Chase suit.

## IV.   ARUGMENTS AND AUTHORITIES

### A.   Summary Judgment/Directed Verdict Standard

The purpose of summary judgment is to pierce the pleadings and assess the proof to determine whether there is a genuine need for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56 (c).  "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir.2008) (internal citation omitted). The court takes all the facts and evidence in the light most favorable to the nonmoving party.  *Pustejovsky v. Pliva, Inc*., 623 F.3d 271, 276 (5th Cir. 2010).  The same is true for a directed verdict--all evidence with all reasonable inferences must be considered in the light most favorable to the nonmoving party.  *Crosthwait Equipment Co., Inc. v. John Deere Co.,* 992 F.2d 525, 528 (5th Cir. 1993), *cert. denied,* 510 U.S. 991, (1993).  If the burden of proof at trial lies with the

nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence

of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on

which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in

the record insufficiently supports an essential element or claim. *Lincoln General Ins. Co. v. Reyna*,

401 F.3d 347, 349 -350 (5th Cir. 2005).   If the moving party fails to meet its initial burden, the

motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge*

*Oil & Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir.2002).

**B.     Elements of Common Law and Statutory Bad Faith**

AFS alleges and will prove that GAIC breached its common law duty of good faith and fair

dealing because it acted in bad faith in construing the exclusion in its policy with AFS because any

insurer knew or should have known from reading the exclusion, along with the facts GAIC had at its

disposal, that coverage was reasonably clear. *Universe Life Ins. Co. V. Giles*, 950 S.W.2d 48, 50-51

(Tex. 1997), *Union Bankers Ins. Co. V. Shelton*, 889 S.W.2d 278 (Tex. 1994).   GAIC violated the

insurance code by engaging in unfair settlement practices.  It did not attempt in good faith to bring

about a prompt, fair, and equitable settlement of AFS' claim once its liability was reasonably clear.

Tex. Ins. Code §541.060(a)(1); it refused to pay AFS' claim without conducting a reasonable

investigation. Id. §541.060(a)(7); it failed to promptly give AFS a reasonable explanation, based on

the policy as it related to the facts and law, for its reasons for denying the claim. Id. § 541.060(a)(3);

and failed within a reasonable time to affirm or deny coverage of AFS' claim. Id. § 541.060(a)(4)(A).

Both parties agree that to be actionable, the breach of good faith and fair dealing must

proximately cause damages and a Texas Insurance Code § 541 violation must be the producing cause

of actual damages.  GAIC Br. 9.  Judge Lynn offers a concise yet thorough explanation of these

standards under Texas law

Under Texas law, the components of proximate cause are cause in fact and foreseeability. The test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about injury," without which the harm would not have occurred. Cause in fact is not established if the defendant's negligence did no more than furnish a condition which made the injury possible. "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries ... [and] justify the conclusion that such injury was the natural and probable result thereof." Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. The danger of injury is foreseeable if its "general character ... might reasonably have been anticipated." The question of foreseeability asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *Tobin v. AMR Corp.*, 637 F.Supp.2d 406, 413 (N.D.Tex. 2009)(internal citations omitted)

It is black letter law that there can be more than one cause for a loss. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992). Causes of an occurrence can also be concurrent when they act contemporaneously to produce a given result. *Id.; Montes v. Pendergrass,* 61 S.W.3d 505, 510 (Tex. App. – San Antonio 2001, no pet.). "An act wanting in ordinary care which actively aids in producing an injury as a direct and existing cause need not be the sole cause; but it must be a concurring cause and such as might reasonably have been contemplated as contributing to the result under attending circumstances." *Mo. Pac. RR. Co. v. American Statesman,* 552 S.W.2d 99, 103, 104 (Tex. 1977). The Texas Supreme Court recently restated the legal standard for "but for" causation. It rejected the formerly approved jury instruction for producing cause--"that cause which, in a natural sequence, was a substantial factor in bringing about an event, and without which the event would not have occurred" and endorsed a modernized description "a cause that is a substantial factor that brings about injury and without which the injury would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45-46 (Tex. 2007). It nonetheless confirmed that even under the new definition "there may be more than one producing cause of an event." *Id.*

Texas state courts and federal courts applying Texas law have recognized extra contractual

claims based on unfair and deceptive trade practices that arise independently of any contractual duty the insurer owes the insured under the policy. *First Tex. Sav. Ass'n v. Reliance Ins. Co.* 950 F. 2d 1171, 1179 (5th Cir. 1992). In a footnote to its opinion in this case, the Fifth Circuit stated

> In its briefing, AFS argues that it did not need to prove a separate injury in order to maintain its extra-contractual claims. It argues that GAIC's denial of insurance proceeds, standing alone, entitled it to recover on its extra-contractual claims. This assertion does not comport with this court's case law. *See Parkans Int'l LLC v. Zurich Ins. Co.,* 299 F.3d 514, 519 (5th Cir.2002)(a Texas insurance dispute case, noting that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from wrongful denial of policy benefits").

This Court need not delve into the nuances of the Fifth Circuit's statement to find in AFS' favor on the remanded issue because the damages AFS now seeks are separate and independent of the damages AFS could recover for its breach of contract claim. Texas law draws a very narrow line with respect to recovering consequential damages for an insurance breach of contract claim. This is primarily because a consequential damage award requires proof that the parties contemplated damages at the time of contracting. *See e.g. Evans v. Pacific Nat. Fire Ins. Co.*, 367 S.W.2d 85, 87 (Tex.Civ.App.1963)("There was no pleading or evidence that such damages were in the contemplation of the parties at the time the contract was entered into, or that appellee had any knowledge or notice thereof. Under the circumstances appellant is not entitled to recover this item of damages.") In the case at hand, the policy forecloses a contractual remedy for lost profits, employee time spent preparing a claim and the Chase suit fees. App. 6-7. Thus, the damages sought are inherently independent from the damages for AFS' breach of contract claim.

The appellate court remanded the case and ordered the district court "to reconsider, in the first instance, whether there is any basis for AFS's extra-contractual claims." 612 F. 3d at 808. That is the issue now before this court, and AFS is entitled to go forward with its claim for extra-

contractual damages as further set forth in this response. AFS' damages include loss of profits, loss of productive time for which AFS' employees were compensated, money AFS would not have had to pay, but for the mishandling of the claim.  Other damages independent of the contract damages AFS incurred include loss of business opportunities consisting of AFS' inability timely to expand into new markets thus increasing its income.  The wrongful and bad faith denial of its claim, and the violations of the Insurance Code were substantial factors in causing lost net profits—AFS had to hold capital in reserve because of GAIC's bad faith,  GAIC caused AFS to reevaluate it entire business model, and put everything it planned on hold pending the outcome of  GAIC's law suit against it and its denial of AFS' claim.  In addition, AFS made a decision to sue McMahon Jr. because GAIC denial of the claim made GAIC uncertain about whether it would recover any of the loss.  Because the adjustor was convinced of the correctness of his position, and had no intention of paying the claim, AFS acted in the most careful way under lawyers advice to protect itself.

**C.      No evidence of a Bone fide Coverage Dispute.**

The issue of whether GAIC acted in bad faith because it denied or delayed payment of AFS/IBEX' claim after its liability became reasonably clear is a question for the jury.  *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997).

**1.      An absurd reading of coverage does not amount to a bone fide dispute.**

The trial court never ruled that GAIC's application of the policy provisions to the facts of this case was not actionable because they rose to the level of a bona fide coverage dispute.  (R11/2509.) In its July 21, 2008 Memorandum Opinion and Order, the District Court stated that GAIC's construction of the definition of forgery "yields unreasonable and absurd results." (ECF Doc. 95  at 16.)  The Fifth Circuit went a bit further, "GAIC's interpretation of the SAA policy's exclusionary clause is unreasonable and leads to absurd results."   612 F.3d 800 at 805.  "A better reasoned reading

of the exclusionary clause… does not bar coverage because it is undisputed that McMahon Jr. did not sign his own name to endorse the checks; he used only the name of 'Charles McMahon Insurance Agency.'" *Id.*

AFS agrees that a legitimate dispute about coverage does not rise to the level of bad faith. But that this case never involved a legitimate question about coverage. The facts of the cases GAIC relies on to illustrate a "bona fide" dispute reveal the contrast between a legitimate challenge to questionable coverage and the unfair and deceptive conduct GAIC engaged in when it denied the claim. GAIC attempts to liken this case to *Pioneer Chlor Alkali Company, Inc. v. Royal Indemnity Company,* 879 S.W.2d 920, 939 (Tex.App.-Hous. [14 Dist.] 1994) arguing that there are no Texas cases on point. GAIC Br. 11-13. The coverage dispute in *Pioneer* involved a complex technically difficult argument advanced by the insured. *Id.* at 928. The law was unsettled and there was no definitive Texas case. The trial court ruled against the insured. The court of appeals found that the policy was ambiguous because both parties had a reasonable interpretation and reversed the lower court based on the rule that exclusions must be construed in favor of coverage if the insureds interpretation is not unreasonable. *Id* at 935-37.

Contrary to GAIC's contention, finding coverage did not require either court to decide a matter based on unsettled Texas law. GAIC re-urges as split authority, the same arguments and cases this Court and the Fifth Circuit rejected as inapplicable for the proposition that there was some legitimate basis for it to deny the claim. See e.g. *Great American Ins. Co. v. AFS/IBEX Financial Services, Inc*., 612 F.3d 800, 806 (5th Cir. 2010)("It is of no consequence that McMahon Jr. was authorized to endorse *other* checks or sign *other* documents, so long as he knew he had no authority to endorse *these* checks.); *Great American Ins. Co. v. AFS/IBEX Financial Services, Inc*. 2008 WL 2795205, 8, 12, (N.D.Tex. July 21, 2008)("Considering the legal context in which this insurance

contract was drafted, it is clear that the exclusionary language operates to bar coverage in situations where one signs his or her own true name.")("The Court finds that the uncontroverted evidence establishes that McMahon Jr. lacked authority to endorse checks procured by fraud in the name of his father's agency.")

When it formally denied the claim and simultaneously filed the declaratory judgment action, GAIC was represented by coverage counsel who could or should have recognized that every case interpreting the SAA policy's definition of forgery involved a person endorsing a covered instrument with their own true name (either alone or in addition to signing the name of another person or entity). GAIC also should have known that the prior policy did not define forgery and that GAIC had assured the Named Insured that the new policy form, which defined forgery, did not in any way change or reduce coverage.  App. 13; 14.  Based on these facts a jury could reasonably decide that GAIC's strained interpretation of forgery was not a reasonable basis for denying AFS' claim.

**2.      GAIC's application of the forgery definition relied on a factual premise that it knew or should have known was untrue—that Charles O. McMahon, Jr. signed his own name to the checks at issue.**

In its final denial, GAIC stated that

> All the checks for which AFS/IBEX is making a claim were made payable to "Charles McMahon Insurance Agency."  The son of Charles McMahon was also named Charles McMahon.  This is significant, because the endorsement on the checks "Charles McMahon Insurance Agency" would contain in part the name of Charles McMahon, Jr., who was endorsing the checks.

App. 55.  GAIC's insurance adjuster testified during trial that "No, that's not his name. He's not Mr. Agency."  App. 98.  This evidence gives rise to an inference that GAIC's adjuster knew he was denying a claim when coverage was clear.  App. 115.

**D.      Evidence shows that GAIC's Bad Faith Caused AFS to Incur the Chase Suit Fee's.**

1.   The law of the case permits AFS to pursue recovery for its Chase suit fees.

GAIC argues that it is entitled to summary judgment on AFS bad faith claim, and its claim

under Tex. Ins. Code § 541 based on the "law of the case." AFS does not dispute that the Fifth

Circuit's holdings are the law of the case.  Rather, it contends that GAIC is quoting the Fifth Circuit

out of context and misconstruing the mandate.   According to the Fifth Circuit

> [T]he attorney's fees and expenses that AFS incurred in the McMahon Jr. Lawsuit
> were the direct result of AFS's voluntary choice to file that lawsuit instead of pursuing
> litigation directly against GAIC for its breach of contract. Nothing demonstrates this
> more clearly than the fact that AFS filed the McMahon Jr. Lawsuit approximately
> eight months *before* GAIC made its decision to deny coverage on AFS's claim. Thus,
> there was no decision or wrongful action of GAIC which forced AFS to incur the
> attorney's fees and expenses associated with the McMahon Jr. Lawsuit.
>
> As noted above, the district court's finding that AFS was entitled to recover the
> attorney's fees it incurred in the McMahon Jr. Lawsuit as consequential breach of
> contract damages was erroneous. But, the attorney's fees incurred by AFS in that
> lawsuit *may* provide the separate injury necessary to support AFS's claim that it is
> entitled to extra-contractual damages for GAIC's alleged bad faith and violations of
> the Texas Insurance Code. Notably, the district court never opined on the merits of
> AFS's extra-contractual claims nor were they dismissed for lack of evidence that
> GAIC acted in bad faith or violated the Texas Insurance Code. For these reasons, we
> remand this matter to the district court to reconsider, in the first instance, whether
> there is any basis for AFS's extra-contractual claims.  *Great American Ins. Co. v.
> AFS/IBEX Financial Services Inc.,* 612 F. 3d  800, 808 (5th Cir.  2010).

GAIC wrongly asserts that the Fifth Circuit meant to conclude that the attorney's fees

incurred in the McMahon, Jr. litigation are not an independent injury that will support either a bad

faith claim or a claim under the Texas Insurance Code.   This assertion flies in the face of the

statement that "But, the attorney's fees incurred by AFS in the Chase suit *may* provide the separate

injury necessary to support AFS' claim that it is entitled to extra-contractual damages for GAIC's

alleged bad faith and violations of the Texas Insurance Code."   A more harmonious reading of the

opinion is that the first paragraph quoted above is limited to the Court's breach of contract analysis.

This reading is supported by the Court's opinion.

Before the two quoted paragraphs, the Court analyzed GAIC's point that as a matter of law, the AFS could not recover its Chase suit fees as consequential damages for its breach of contract claim. The Fifth Circuit did not get any deeper into its analysis of AFS' recovery of the Chase suit fees as consequential damages for its breach of contract claim[5] than to determine that the "but for" element of causation was missing. *Id.* It was the timing of events that persuaded the Court that the breach of contract could not have caused AFS to incur the Chase suit fees. *Id.* This reasoning does not foreclose the possibility that GAIC's wrongful conduct occurring before AFS sued Chase might have caused AFS to incur the Chase suit fees. Sections III(A)(1)-(4) above detail the evidence of GAIC's bad faith occurring before AFS sued Chase. Section III(B)(1) details some of the trial evidence that GAIC's bad faith caused AFS to incur the Chase suit fees.

GAIC makes numerous citations to cases that establish when a circuit court issues its opinion that the opinion becomes the law of the case. None of the cases are of any relevance to GAIC's arguments because there is no dispute that the law of the case determines the rule the District Courts must apply on remand. In the section of its brief titled "The Fifth Circuit remanded for this Court to apply its holdings regarding causation," GAIC returns to its argument that the Fifth Circuit's opinion is the law of the case citing cases that make that clear. GAIC ends with its conclusion that because the Fifth Circuit remanded the case without stating the reason, the opinion held that there was "no causation" between GAIC's alleged violations of the Insurance Code and its breach of good faith and fair dealing and AFS' damages. The appellate court made it clear why it remanded the case. "We VACATE the award of consequential damages to AFS and REMAND AFS' extra-contractual claims

---

5. The Fifth Circuit relied on *Baja Energy v. Ball*, 669 S.W.2d 836, 839 (Tex. App.-Eastland, no writ)—a breach of contract case—in analyzing whether the Chase suit fees were recoverable. *Id.* at 807-08.

to the district court for further proceedings consistent with this opinion. *Id.* at 808.

GAIC's brief correctly quotes portions of the Court of Appeals opinion, but it reaches conclusions from the quotes that logically do not follow, are taken out of context, or distortions of the actual language in the opinion. The Fifth Circuit held that "there can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omission caused injury independent of those that would have resulted from wrongful denial of policy benefits." *Id.* 612 F.3d at 808 quoting *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002). Before GAIC breached the contract AFS could not make a "voluntary choice" between suing GAIC for breach of contract or suing Chase for paying forged checks. *See GAIC v. AFS*, 612 F.3d 800, 807-08.

Any holding of the Fifth Circuit must be limited to the issue it was deciding. AFS may recover its Chase suit fees under its statutory insurance code claim and its common law breach of good faith and dealing claims if it proves that GAIC's actionable conduct was the proximate or producing cause of AFS incurring those fees.

2. Texas law recognizes that a tort can support recovery of attorney fees as an element of consequential damages.

The Texas Supreme Court recently cautioned against the overbroad reading or application of cases holding that attorney fees are not recoverable either in a tort of contract action unless provided by statute or by contract. "Our statement, considered without reference to the facts of the case, could be read out of context as generally precluding recovery of attorney's fees for prosecuting or defending a suit. It was not intended to extend so far. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development and Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). The Court confirmed the American Rule does not apply when a party seeks attorney fees as a measure of economic harm it suffered as the result of another's tort. *Id.* at 121.

In *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development and Research Corporation* the court analyzed whether there was sufficient evidence for the jury to award attorney fees as compensatory damages in a malpractice case. The jury had awarded damages for attorney fees that the tortfeasor charged for post judgment work and attorney fees for separate counsel who were brought in post-trial to argue that even though there was no jury finding the court could still enter the judgment the claimant desired. *Id.* The Texas Supreme Court held that the evidence was insufficient to support the award of the tortfeasor's post-trial fees because there was no evidence in the record that the tortfeasor's the malpractice caused the need for post judgment work—reasoning that even without malpractice there might have been appeals or other work to be done. *Id.* at 122-23. But, the court found that evidence was legally sufficient to support the award of separate counsel's fees because they were proximately caused by the tortfeasor's failure to include certain questions in the jury charge. *Id.* In this case the evidence as laid out above demonstrates that but for GAIC's adjuster coming to the snap judgment about coverage based on an unreasonable interpretation of the policy AFS would not have sued Chase.

**E.      Legal Challenges to Lost Profit Claims Fail.**

GAIC's argument that the availability of prejudgment interest somehow precludes recovery of lost profits is backwards. At most, the cases GAIC cite stand for the proposition that prejudgment interest may not be allowed on lost profit claims. See e.g. *Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216, 230 -231 (Tex.App.--San Antonio 2009)(**"**In its third issue, Bay Rock asserts that St. Paul is not entitled to prejudgment interest because its suit was not for property damage; rather it was to recover its economic loss. . . .   Statutory pre-judgment interest is

authorized only in wrongful death, personal injury, and property damage cases. TEX. FIN. CODE ANN. § 304.102 (Vernon 2006); see *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex.1998) (stating that, for purposes of statutory prejudgment interest, the scope of "property damage cases" includes only claims for damage to tangible property, not economic loss)."

GAIC's law of the case argument fails with respect to AFS' lost profit claims for the same reason it fails with respect to AFS' Chase suit claim. The argument is even more strained in the context of lost profits since the holding had nothing to do with lost profits. GAIC's argument that its conduct did not cause AFS' lost profits is based solely on its evidence that Searcy was not a party to AFS' decision to hire or not hire someone. GAIC Br. 9. At most this argument goes only to the whether the lost profits were forseeable, not the "but for" causation. The argument would not reach AFS statutory claims which require only a producing cause. GAIC Br. 9. Finally, to say that GAIC's conduct merely furnished the context for AFS's lost profits is nonsensical. Prior to the loss AFS had determined that certain markets were ripe for entry and that the changing industry would require them to expand to remain competitive. App. 145 at ¶18, 25. The combination of the energy money and uncertainty caused by GAIC's bad faith put the brakes on AFS' planned expansion. App. 146 at ¶28; 237 at ¶20. When it recovered from the worst of the fall out from GAIC's bad faith, ASF executed its planned expansion and improved its net profits. There is a direct causal link between the lost net profits and GAIC's bad faith which delayed AFS' expansion. App. 146 at ¶29; 236 at ¶19.

## F.    Other Claims.

Dismissal of AFS' Breach of Contract and Prompt Payment claims would be unfounded. AFS won on these claims and contrary to GAIC's contention it has not paid AFS in full for these claims because AFS still has a pending motion for appellate attorney fees associated with these claims. AFS voluntarily drops its claim for misrepresentation in the sale of the policy but notes that evidence that

GAIC presented the policy as the same in substance supports its claim that GAIC's coverage position

was completely unfounded.

## V.    SUMMARY JUDGMENT IS INAPPRORIATE FOR AFS'S OTHER LIABILITY AND DAMAGE THEORIES

**A.    Incomplete Request for Summary Judgment.**

Although GAIC failed to style its motion a "partial" motion for summary judgment, it is.

As demonstrated by sections III(A)(2-4) GAIC fails to challenge the AFS claims based on GAIC

Texas Insurance Code 541.060 violations:

> (3)  failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
> (4)  failing within a reasonable time to:
> (A)  affirm or deny coverage of a claim to a policyholder;
> (7)   refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

AFS alleged that these violations were the producing cause of its damages including loss of

employee productivity and lost profits caused by its delayed entry into new markets.  Since the only

liability theory AFS challenged is failing to pay a claim when coverage was reasonably clear and

each of the other violations potentially were a substantial factor in AFS sustaining actual damages

summary judgment would be inappropriate.

**B.    Material issues of fact require a jury to decide liability and damages on AFS' unchallenged theories.**

Without waiving any rights with respect to GAIC's liability theories or damages AFS

would have offered at least the following evidence:

> GAIC's failure to give AFS a reasonable explanation of the reason for its denial of the claim in July of 2006 caused AFS to use more of its resources.  App. 236 at ¶19.

> GAIC's poor investigation caused AFS to use more of its internal resources.  *Id.*

**AFS' Brief in Support of Response in Opposition to Motion for Summary Judgment**        **Page 23**
*Electronically Filed*

AFS employees spent significantly more time preparing the claim than they would have had to if GAIC had been making a good faith effort to effectuate a prompt, fair and reasonable settlement when coverage was reasonably clear.  App. 140; App. 237 at ¶21-22.

If GAIC had denied the claim promptly after Searcy reached his snap judgment GAIC would have saved hundreds of hours in employee and executive time spent from September 2006 to April of 2007 preparing to submit the claim.  App. 140 at ¶4-5; 147 at ¶33; 236 at ¶19.  AFS seeks the cost of paying its employees for work that would have been avoided but for GAIC's Insurance Code Violations. *Id.*  Similarly with the Chase suit fees that could have been avoided, AFS also seeks the cost of paying employees for Chase suit work that could have been avoided.  *Id.*; App. 236 at ¶17.

If GAIC had either promptly denied the claim or given a good explanation of its coverage position, Jay Scheideman would have realized the absurdity of GAIC's position and started down the path that eventually lead to victory in the coverage suit earlier.  App. 236 at ¶19.  The extra five to ten months added were substantial factors in delaying AFS's entry into new markets and corresponding lost profits.  App. 146 at ¶29; 237 at ¶20.  If GAIC had paid the claim in 2006 or 2007 AFS would have entered new markets in 2007.  App. 146 at ¶29.

## VI.    CONCLUSION

For the reasons stated herein GAIC's motion should be denied with the exception of AFS' misrepresentation of the policy terms count which it voluntarily drops.


Respectfully submitted,

DEDMAN & HANDSCHUCH, PLLC
s/Linda Dedman
    Linda M. Dedman
    State Bar No. 24009078
    ldedman@coveragelawdallas.com
    Floyd Clardy, Of Counsel

State Bar No. 04268010
fclardy@sbcglobal.net
12225 Greenville Ave., Ste. 202
Dallas, Texas 75243
(214) 361-8885 (telephone)
(214) 363-4902 (facsimile)
**ATTORNEYS FOR AFS/IBEX**

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2011, the foregoing document was served upon all counsel of record via the Courts notice of electronic filing that is automatically generated by ECF.

s/Linda M. Dedman