**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GREAT AMERICAN INSURANCE** | § | |
| **COMPANY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:07-CV-924-O** |
| | § | |
| **AFS/IBEX FINANCIAL SERVICES,** | § | |
| **INC.,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Before the Court is Great American Insurance Company's Motion for Summary Judgment (ECF No. 188) and AFS/IBEX Financial Services, Inc.'s Motion to Strike Counterclaim or in the Alternative Answer and Motion for Partial Summary Judgment (ECF No. 190).

**I.      BACKGROUND**

This case arises out of a dispute over insurance coverage. AFS/IBEX Financial Services, Inc. ("AFS") entered into an agreement with Charles McMahon, Sr. ("McMahon Sr."), the owner of Charles McMahon Insurance Agency, authorizing McMahon Sr. to originate, create, and sign premium finance agreements on behalf of insureds. GAIC Compl. 2, ECF No. 1. AFS sought insurance coverage from Great American Insurance Company ("GAIC") to protect it from crime risks. *Id.* GAIC sold AFS two applicable policies. *Id.*

McMahon Sr.'s son, Charles McMahon, Jr. ("McMahon Jr.") submitted applications to AFS for financing when no insurance was meant to be obtained. *Id.* AFS approved the financing requests and issued at least 120 checks payable to "Charles McMahon Insurance Agency." *Id.* Those checks were then deposited by McMahon Jr. into his own accounts. *Id.* AFS submitted a

claim to GAIC's claim department on June 30, 2006. AFS 2d Am. Countercl. 8, ECF No. 180. On September 14, 2006, AFS filed a lawsuit against the McMahons and Chase Bank (the "Chase Lawsuit"). App. to AFS Resp. GAIC Mot. Summ. J. 88, ECF No. 231-4. On May 23, 2007, GAIC officially denied AFS's claim and filed suit seeking a declaratory judgment that the crime insurance policies issued to AFS did not provide coverage for losses stemming from checks issued by AFS payable to Charles McMahon Insurance Agency. *See id.* AFS contended that the insurance policies purchased from GAIC provided coverage and filed a counterclaim for breach of contract, fraud, misrepresentation, bad faith, and for violations of the Texas Insurance Code and Prompt Payment Statute. *See* Am. Answer & Countercl., ECF No. 17.

This Court granted in part and denied in part the Parties' cross-motions for summary judgment finding coverage for AFS's losses under the forgery-alteration coverage of two crime policies issued by GAIC. ECF No. 95. However, the Court found that issues of fact remained regarding AFS's extra-contractual tort claims, its prompt payment claims, and the damages for AFS's breach of contract claim. *Id.* The Court held a trial on the remaining issues in August 2008. Prior to submission of the case to the jury, the Court ruled that AFS was not entitled to jury instructions regarding its common law bad faith claim and unfair claims settlement practices claim. However, the jury found litigation expenses incurred in AFS's suit against Chase Bank were a natural, probable, and foreseeable consequence of GAIC's failure to comply with its duty to pay under the insurance policy, entitling AFS to recover these expenses as consequential breach of contract damages. In addition, AFS was found to be entitled to an 18% statutory fee and reasonable attorney's fees.

GAIC appealed the judgment and AFS cross-appealed. *Great Am. Ins. Co. v. AFS/IBEX Fin.*

*Servs, Inc.*, 612 F.3d 800, 804 (5th Cir. 2010). The Fifth Circuit entered an opinion affirming this Court's coverage finding and its contractual damage, statutory interest, and attorney's fees awards to AFS. *Id.* at 804-806. The circuit court also affirmed this Court's conclusion that statutory interest should stop accruing on the date judgment is rendered, vacated the award of consequential contract damages to AFS, and remanded AFS's extra-contractual claims. *Id.* at 806-809. The Court now considers AFS's bad faith and Texas Insurance Code claims pursuant to the Fifth Circuit's order of remand. *Id.* at 809.

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility

---

[1]Effective December 1, 2010, Rule 56 of the Federal Rules of Civil Procedure has been amended in order "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committees' note. As the Committee Note to Rule 56 states, "[t]he standard for granting summary judgment remains unchanged." *Id.*

determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255.

As long as there appears to be some support for the disputed allegations such that "reasonable minds

could differ as to the import of the evidence," the motion for summary judgment must be denied.

*Id.* at 250.

## III.   ANALYSIS

### A.   Preliminary Issues

As a preliminary matter, the Court grants GAIC's motion for summary judgment on all

claims mentioned in AFS's Second Amended Counterclaim other than the common law bad faith

claim and those claims brought under Chapter 541 of the Texas Insurance Code.   AFS's breach of

contract and Chapter 542 prompt payment claims were already decided in its favor by this Court and

affirmed by the Fifth Circuit.   AFS argues that the claims should not be dismissed because GAIC

had not paid in full due to a pending motion for appellate attorney fees.   Br. Opp. Mot. Summ. J. 22,

ECF No. 216.   However, since the filing of AFS's response, the Court ruled on the motion for fees.

*See* ECF No. 222.   Additionally, the Court's February 24, 2011 Order shows that all other portions

of those causes of action have been paid in full. *See* ECF No. 198.   Accordingly, the Court finds that

the AFS's claims for breach of contract and violation of Chapter 542 should be and are hereby

**DISMISSED**.

GAIC also moves to dismiss AFS's fraud, misrepresentation, and promissory estoppel

claims.   Br. Supp. Mot. Summ. J. 12-13, ECF No. 189.   GAIC argues that the fraud and

misrepresentation claims were disposed of on summary judgment before the appeal.   *Id.* at 14

(referring to ECF No. 95).   AFS did not appeal the Court's ruling on those issues.   *Id.*   In its

response, AFS voluntarily drops its claim for misrepresentation, but it does not mention the fraud

or promissory estoppel claims.  Br. Opp. Mot. Summ. J. 22, ECF No. 216.  The Court finds that AFS

did not appeal these issues and therefore has waived the right to renew these arguments.  *See United*

*States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 694 (5th Cir. 2010).  Accordingly, the

Court finds that AFS's fraud, misrepresentation, and promissory estoppel claims are **DISMISSED**.

### B.       Bad Faith and Chapter 541 of the Texas Insurance Code

During the trial of this case, this Court determined as a matter of law that AFS was not

entitled to extra-contractual claims because they failed to plead and prove injuries separate from

those that flowed from GAIC's breach of contract.  *Great Am. Ins.*, 612 F.3d at 808.  Although the

Fifth Circuit agreed that AFS must show independent injury, it remanded the instant case for this

Court "to reconsider, in the first instance, whether there is any basis for AFS's extra-contractual

claims."  *Id.*  This Court's determination that AFS was entitled to consequential breach of contract

damages based on the fees spent in the Chase Lawsuit was in error, but the circuit court opinion

states that "the attorney's fees incurred by AFS in that lawsuit *may* provide the separate injury

necessary to support AFS's claim that it is entitled to extra-contractual damages for GAIC's alleged

bad faith and violations of the Texas Insurance Code."  *Id.*  Because this Court never considered

these claims on the merits or dismissed them for lack of evidence, they were remanded.  *Id.*

AFS alleges that GAIC breached the common law duty of good faith and fair dealing because

it acted in bad faith in construing the exclusion in its policy with AFS.  Br. Opp. Mot. Summ. J. 12,

ECF No. 216.  AFS also alleges that GAIC violated the Texas Insurance Code through unfair

settlement practices including failure to attempt in good faith to bring about a prompt, fair, and

equitable settlement of AFS's claim once its liability was reasonably clear, Tex. Ins. Code §

541.060(a)(1), refusal to pay AFS's claim without conducting a reasonable investigation, *id.* §

541.060(a)(7), failure to promptly give AFS a reasonable explanation for the reasons for denying

the claim, *id.* § 541.060(a)(3), and failure to affirm or deny coverage within a reasonable time, *id.* §

541.060(a)(4)(A).  Br. Opp. Mot. Summ. J. 12, ECF No. 216.  GAIC moves to dismiss each of these

claims.[2]

### 1.    Bona Fide Dispute

An insurer is liable for both common law bad faith claims as well as violations of the Texas

Insurance Code if it "knew or should have known that it was reasonably clear that the claim was

covered."  *Liberty Mut. Ins. Co. v. Mid-Continent Ins. Co.*, 405 F.3d 296, 309 (5th Cir. 2005)

(quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997)); *Mid-Century Ins. Co. v.

Boyte*, 80 S.W.3d 546, 549 (Tex. 2002) (stating the standard for common law and statutory breach

of good faith are the same).  An insurer "does not breach its duty of good faith and fair dealing

merely by erroneously denying a claim."  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d

875, 881 (5th Cir. 2004).  Instead, an objective standard allows courts to determine "whether a

reasonable insurer under similar circumstances would have delayed or denied payment of the claim."

*Aleman v. Zenith*, __S.W.3d__, 2011 WL 1663152, *4 (Tex. App. –El Paso 2011) (citing *Aranda

v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)).  The focus is not on whether the claim was

valid, but instead on the reasonableness of the insurer's conduct in handling the claim.  *Id.* (citing

*Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)).  However, an insurer

cannot avoid liability by failing to investigate a claim so that liability never becomes clear.  *Giles*,

---

[2]AFS argues that GAIC's motion for summary judgment was incomplete because GAIC failed to challenge AFS's claims based on Texas Insurance Code § 541.060 violations.  However, as stated in their reply, GAIC made clear in the motion for summary judgment that they sought dismissal of all of AFS's counterclaims.  GAIC Reply 16, ECF No. 221.  The Court agrees that this was apparent and therefore does not further address AFS's argument.

950 S.W.2d at 56 n.5.  Whether an insurer's liability is "reasonably clear" is a question of fact to be decided by a jury unless there is no conflict in the evidence. *Id.* at 56.

GAIC argues that the dispute involved in this case pertained solely to coverage and therefore, the insuror should not be subject to bad faith liability.  Br. Supp. Mot. Summ. J. 11, ECF No. 189 (citing *Pioneer Chlor Alkali Co., Inc. v. Royal Indem. Co.*, 879 S.W.2d 920 939-40 (Tex. App.– Houston 1994, no writ.)).  GAIC presents summary judgment evidence alleging that its rejection of AFS's claim was based on its interpretation of the policy.  GAIC Reply 5, ECF no. 221.  Their interpretation was bolstered by the fact that the payee on the checks refused to sign an affidavit stating that the endorsements were forgeries.  *Id.*  The definition of forgery in the policies as well as other issues were legal questions of first impression in Texas, and other jurisdictions that had addressed such policies had found no coverage.  Br. Supp. Mot. Summ. J. 11-12.  Therefore, GAIC argues that its decision to dispute coverage cannot lead to claims of a breach of the duty of good faith and violation of the Texas Insurance Code.  *Id.*

In response, AFS relies on the words of this Court as well as the Fifth Circuit to dispute GAIC's argument that their refusal to pay was based on a bona fide dispute.  This Court's Memorandum Opinion and Order stated that GAIC's "construction of the definition of forgery . . . yields unreasonable and absurd results."  Mem. Op. & Order 16, ECF No. 95.  The Fifth Circuit agreed and stated that "GAIC's interpretation of the SAA policy's exclusionary clause is unreasonable and leads to absurd results."  *Great Am. Ins.*, 612 F.3d at 805.  AFS distinguishes this case from *Pioneer*, arguing that case involved a technically complex argument and unsettled law.  Br. Opp. Mot. Summ. J. 16, ECF No. 216.  Additionally, AFS argues that GAIC's insurance adjuster knew that McMahon Jr.'s name was not Charles McMahon Insurance Agency.  *Id.* at 17.  Therefore,

the adjuster knew or should have known he was denying a claim when coverage was clear.  *Id.*

The Fifth Circuit's opinion discusses and rejects three arguments made by GAIC regarding the dispute.  *Great Am. Ins.*, 612 F.3d at 804-06.  GAIC argued that (1) the Court should apply the definition of forgery found in the Uniform Commercial Code; (2) the definition of forgery within the SAA policy does not include a signature containing in part a proper name; and (3) no forgery occurred because McMahon Jr. was an agent for his father and therefore had authority to endorse the checks.  *Id.*  As argued by GAIC, both this Court and the Fifth Circuit's determinations that GAIC relied on an incorrect interpretation do not mean that no bona fide dispute existed as to coverage.  The fact that litigation resulted in a finding that GAIC relied on a wrong or even "absurd" interpretation does not inherently mean that coverage was "reasonably clear" under the standard set out in *Giles*.

The Court must focus on whether GAIC's conduct was reasonable rather than whether the claim was valid or GAIC's policy construction proper.  *See Lyons*, 866 S.W.2d at 601.  AFS relies on the Court's holding that GAIC's interpretation was incorrect as well as the theory that GAIC's application of its forgery definition was based on a factual premise that it knew or should have known was untrue.  Br. Opp. Mot. Dismiss 17, ECF No. 216.  AFS cites to the testimony of GAIC's insurance adjuster acknowledging that McMahon Jr.'s name is not "Charles McMahon Insurance Agency."  *Id.*  Although the adjustor would obviously be aware of this fact, this alone does not discount all of the legal theories presented by GAIC.  As GAIC argues, the facts surrounding McMahon Jr.'s criminal activities were not disputed, but instead it was the legal issues about which GAIC debated.  Br. Supp. Mot. Dismiss 11, ECF No. 189.  AFS makes no arguments about any pretextual basis for GAIC's refusal to cover its claims.  Neither party is able to cite a case directly

-8-

on point showing that it should have been clear to GAIC that AFS's policy required coverage. Accordingly, the Court finds that the instant case involved a bona fide dispute precluding recovery on common law or statutory bad faith claims.

2.    Causation

In addition to GAIC's argument that bad faith claims are not applicable to this coverage dispute, it also states that AFS should not be able to recover because each of the claims lack the necessary causation. Even assuming that GAIC did not have a bona fide dispute over coverage, AFS's extra contractual claims should still be dismissed for lack of causation.

As noted by the Fifth Circuit, in order to be actionable, extra-contractual claims require proof that the defendant caused an independent injury. "There can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198-99 (Tex. 1988)). A common law bad faith claim requires proof that the act or practice was the proximate cause of the alleged injury while a Texas Insurance Code violation must be the producing cause of the damages. *See Castaneda*, 988 S.W.2d at 193, 193 n.13. Both producing cause and proximate cause need actual causation in fact, which "requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred." *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). Therefore, "cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible." *IHS Cedars Treatment Ctr. of DeSoto v. Mason*, 143 S.W.3d 794, 799 (Tex. 2003).

-9-

In its amended counterclaim, AFS alleges several injuries separate from that suffered from the breach of contract claim. The Fifth Circuit stated that fees resulting from the Chase Lawsuit may provide an injury sufficient to support AFS's bad faith and Texas Insurance Code claims. Beyond the attorney's fees, AFS also alleges damages for loss of policy proceeds, recovery costs, past lost profits, loss of productivity, and increased costs of doing business. *See* 2d. Am. Countercl. ¶ 27, ECF No. 180. These additional injuries can be divided into lost profits and lost opportunity.

a.    *Chase Lawsuit Fees*

As already noted, the Fifth Circuit asserted that injury separate from the breach of contract may be provided by the attorney's fees paid in pursuit of the Chase Lawsuit. Previously, this Court awarded AFS the fees as consequential damages of the breach of contract. However, the Fifth Circuit found that

> the attorney's fees and expenses that AFS incurred in the [Chase] Lawsuit were the direct result of AFS's voluntary choice to file that lawsuit instead of pursuing litigation directly against GAIC for its breach of contract. Nothing demonstrates this more clearly than the fact that AFS filed the [Chase] Lawsuit approximately eight months *before* GAIC made its decision to deny coverage on AFS's claim. Thus, there was no decision or wrongful action of GAIC which forced AFS to incur the attorney's fees and expenses associated with the [Chase] Lawsuit.

*Great Am. Ins.*, 612 F.3d at 808. Therefore, the attorney's fees could not be considered consequential damages of the breach of contract claim. However, the Court noted that "the attorney's fees incurred by AFS in that lawsuit *may* provide the separate injury necessary to support AFS's claim that it is entitled to extra-contractual damages for GAIC's alleged bad faith and violations of the Texas Insurance Code." *Id.* Because this Court dismissed AFS's claims on a request for judgment as a matter of law, it never considered the merits of the extra-contractual claims. *Id.*

GAIC argues that there is no evidence of any independent injury that could support AFS's extra-contractual claims. Br. Supp. Mot. Summ. J. 2, ECF No. 189. GAIC relies heavily on the Fifth Circuit's opinion and the "law of the case" doctrine for the premise that causation has already been decided in its favor. *Id.* at 3. GAIC takes the Fifth Circuit's statement that "no decision or wrongful action of GAIC . . . forced AFS to incur the attorney's fees and expenses associated with the [Chase] Lawsuit" to mean that there is not adequate causation and the case was only remanded to this Court to apply that holding. *Id.*

AFS acknowledges the "law of the case" doctrine but argues that GAIC misinterprets the Fifth Circuit's opinion. Br. Opp. Mot. Summ. J. 18, ECF No. 216. AFS believes the opinion must be read together with the statement that the Chase Lawsuit may provide the separate injury necessary to find extra-contractual damages. *Id.* Therefore, a better reading of the opinion would be to limit the Fifth Circuit's holding regarding causation to the breach of contract analysis. *Id.* AFS states that the court's reasoning does not foreclose the possibility that GAIC's wrongful conduct occurring before AFS brought the Chase Lawsuit may have caused AFS to incur the attorney's fees at issue. *Id.* at 19. The Court agrees with AFS's interpretation of the Fifth Circuit's opinion, to an extent. Although the holding should not be limited only to the question of breach of contract, it also does not foreclose the possibility that AFS could show an independent injury from extra-contractual claims leading to the attorney's fees as damages. The Court will not read inconsistency into the Fifth Circuit's ruling by interpreting it to find no causation but then also direct this Court to consider the merits of the extra-contractual claims.

The Fifth Circuit found that the fees were the result of AFS's voluntary decision to file the Chase Lawsuit rather than sue GAIC directly for the breach of contract. This statement appears to

relate directly to the question of causation for the breach, as does the court's comment regarding the fact that the suit was filed eight months before GAIC's decision to deny coverage.  However, this Court cannot help but take into consideration the fact that the circuit court did state that "no decision or wrongful action of GAIC . . . forced AFS to incur the attorney's fees and expenses associated with the [Chase] Lawsuit." *Great Am. Ins.*, 612 F.3d at 808.  The standard for an award of attorney's fees as consequential damages is whether "the wrongful act of another forces it to prosecute or defend itself in a third party lawsuit." *Id.*  This standard is not the same as that considered in the instant claims.  Therefore, while the Court will consider the Fifth Circuit's determination on causation as it relates to consequential damages, that outcome is not determinative for AFS's extra-contractual claims.

For the Court to find that GAIC's insurance code violations were a producing cause or bad faith was a proximate cause of AFS's attorney's fees, there must be evidence that without those violations, AFS would not have incurred the fees." *Prudential Ins. Co.*, 896 S.W.2d. at 161.  Although GAIC spends most of its argument relying on the Fifth Circuit's holding, it also states that AFS does not have evidence of causation.  *See* Br. Supp. Mot. Summ. J. e, ECF No. 189.  As evidence of causation, AFS offers the testimony of Jay Scheideman, the Secretary and Treasurer of AFS, three letters and emails regarding AFS's forgery claim,  and the testimony of Richard Alan Searcy, the GAIC claims adjustor assigned to the case.  *Id.* at 5-10.

AFS argues that the testimony of Mr. Scheideman alone is enough to satisfy the "but for" element of causation.  Mr. Scheideman states that the letters and emails from GAIC, described further below, "set it up that they were going to deny [the claim].  As a businessman reading those letters, there is no doubt in our mind they were going to fight it."  Br. Opp. Mot. Summ. J. 9-10,

ECF No. 216.  AFS argues that this is enough for "but-for" causation, however, this does not amount to much more than a conclusory statement by an employee of AFS, which is not sufficient evidence to overcome a motion for summary judgment.  *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  The only basis for Mr. Schedeman's statements are the letter and emails, which as shown below are not much more than early communications by GAIC providing their thoughts on AFS's claims and asking for additional information.

A July 18, 2006 email includes a statement by Searcy that he had not "found any coverage in your policy" but also telling AFS that they should inform him "[i]f there is anything else you can show me that would help me find coverage for you."  App. to Br. Opp. Mot. Summ. J. 29, ECF No. 213-2.  A letter from Mr. Searcy on the same day provides a more in depth explanation stating that "[i]t appears from what we have learned from you so far, that there does not seem to be any coverage for your loss from either the Employee Dishonesty or Forgery or Alternation insuring agreements on your Crime Protection Policy."  *Id.* at 31.  The letter then invites AFS to present additional information or evidence that might support a claim under the policy.  *Id.*  Finally, a July 21, 2006 email states again that Mr. Searcy does not see a case for forgery but states that AFS should provide additional information for why the loss should be covered.  *Id.* at 33.  These emails were written approximately three weeks after AFS's initial filing of its claim with GAIC.  After only three weeks of investigation, these letters alone do not provide evidence to show that but for GAIC's actions, AFS would not have filed suit against Chase.

As discussed in a previous section, Mr. Searcy testified about his awareness that McMahon Jr.'s full name was not in fact "Charles McMahon Insurance Agency."  Br. Opp. Mot. Summ. J. 5, ECF NO. 16.  AFS implies that this testimony shows that GAIC's reading of the policy was absurd

and therefore provides sufficient evidence for a jury to conclude that GAIC knew in July or August that coverage was reasonably clear. *Id.* at 6. GAIC does not dispute that the adjustor never believed McMahon Jr.'s name to be "Mr. Agency." However, GAIC's awareness of this fact did not preclude the additional arguments made by the company as a basis to deny coverage of the forgery nor does it provide sufficient evidence that but for GAIC's actions, AFS would not have filed a suit against McMahon Jr.

In response to GAIC's motion for summary judgment, AFS relies on the testimony of its treasurer and secretary, three communications made within a couple of weeks of the filing of the claim, and an obvious statement made by Mr. Searcy, the GAIC claims adjustor as evidence of at least potential disputes of fact proving that GAIC's actions caused AFS to file the suit against McMahon Jr. Mr. Scheidman's testimony provides his conclusory opinion that it was because of the letters that AFS chose to file the Chase Lawsuit. The letters themselves however appear to be little more than initial statements regarding the likelihood of success of the forgery claims. The Court found and the Fifth Circuit affirmed that GAIC did eventually breach its contract to AFS. These letters do not appear to be enough to show that without these actions by GAIC, AFS would not have taken steps to begin what it had to have known could be a costly lawsuit. When combined with the Fifth Circuit's opinion that no actions or wrongdoing by GAIC caused AFS to file the suit, the Court finds that AFS has not met its burden to show causation as it relates to the Chase Lawsuit fees. Accordingly, the Court finds that GAIC's motion for summary judgment should be **GRANTED** as it relates to the Chase Lawsuit attorney's fees.

### b.    *Lost Profits*

AFS claims lost profits from (1) the loss of the use of the money from the settlement and (2)

the financial drain from the Chase Lawsuit.  AFS 2d Am. Countercl. ¶ 27, ECF No. 180.  GAIC first

argues that there is no cause of action under Texas law for lost use of policy proceeds.  Br. Supp.

Mot. Summ. J. 8, ECF No. 189.  GAIC states that a party is compensated for loss of use of funds

through both prejudgment interest as well as the Prompt Payment Statute, and therefore there is no

injury independent from the breach of contract.  GAIC Reply 6-9.  AFS responds that GAIC

misconstrues the cases it cites and instead each of the cases actually says that prejudgment interest

may not be allowed on a lost profits claim.  Br. Opp. Mot. Summ. J. 21, ECF No. 216 (citing *Bay*

*Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216, 230-31 (Tex. App.– San

Antonio 2009, pet. denied)).  However, *Bay Rock*, the case discussed by AFS, actually stands only

for the premise that *statutory* pre-judgment interest was authorized in wrongful death, personal

injury, and property damage cases.  *Bay Rock*, 298 S.W.3d at 230.  As argued by GAIC, the analysis

in that case relating to the recovery of statutory prejudgment interest is irrelevant to this action.

GAIC Reply 7, ECF No. 221.

    "Obviously, in any breach of contract case, the failure of one party to pay another will

deprive the innocent party of the use of that money."  *Penner Cattle, Inc. v. Cox*, 287 S.W.3d 370,

372 (Tex. App.– Eastland, 2009, pet. denied).  "Prejudgment interest is the 'compensation allowed

by law as additional damages for lost use of the money due as damages during the lapse of time

between the accrual of the claim and the date of judgment.'"  *Johnson & Higgins of Tex., Inc. v.*

*Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (quoting *Cavnar v. Quality Control*

*Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)).  There are two sources for prejudgment interest,

including common law and statutory interest.  *Id.*  Allowing a party to recover for both prejudgment

interest on the breach of contract as well as lost use of money would be duplicative.  *See Penner*

-15-

*Cattle*, 287 S.W.3d at 272 n.3.  Additionally, AFS was also compensated for the lost use of the settlement proceeds through the 18% per annum interest on proceeds awarded by this Court and affirmed by the Fifth Circuit.  Accordingly, the Court finds that there is no separate cause of action for lost profits due to the loss of the use of the settlement proceeds.

GAIC also argues that AFS fails to show lost profits from the financial drain of the Chase Lawsuit.  Br. Supp. Mot. Summ. J. 9-10, ECF No. 189.  GAIC states that the law of the case doctrine precludes a finding of damages from the drain, and additionally, there is no evidence of causation to support AFS's claim.  GAIC Reply 6-13, ECF No. 221.  Having already determined that the fees did not result from GAIC's actions, it would follow that any lost profits from money spent on the lawsuit were also not caused by GAIC.  AFS provides evidence that it chose not to expand into certain markets and hire  new employees because of the uncertainty caused by GAIC's actions.  Br. Opp. Mot. Summ. J. 22, ECF No. 216.  Although some of the factors discussed by AFS may have influenced the decision not to expand, including the Chase Lawsuit, AFS fails to provide any evidence that but for that lawsuit, the company could not have entered new markets or hired new employees. The required element of causation is missing.  Accordingly, the Court finds that GAIC's motion for summary judgment should be **GRANTED** as it relates to the lost profits claim.

> c.    *Lost Opportunity*

Finally, AFS argues that it has additional damages from lost employee wages and productivity from time spent by employees while working on issues related to the forgery claim. AFS 2d Am. Compl. ¶ 27, ECF No. 180.  AFS's second amended counterclaim refers to wages paid to employees that worked on the Chase Lawsuit as well as the loss of their productivity.  *Id.* ¶ 26. GAIC's reply also deals with potential lost opportunity from time spent on the insurance claim itself

and this litigation, but it does not appear that AFS means to allege damages from work other than the Chase Lawsuit. *See* AFS Reply Mot. Part. Summ. J. 4, ECF No. 217 ("AFS seeks to recover for the value of its lost time in a different suit.")

GAIC argues that AFS cannot recover for time spent on the Chase Lawsuit for two reasons. First, the law of the case doctrine precludes a finding that GAIC caused the damages. Although this Court has chosen not to rely entirely on the Fifth Circuit's statements relating to the breach of contract claim, the Court has already found a lack of causation which would preclude the recovery of these damages. GAIC also states that under Texas law lost time and earnings spent during litigation are considered litigation expenses and are not recoverable unless explicitly provided for in a statute or contract. GAIC Reply 14, ECF No. 221 (citing *Profitlive P'ship v. Surber*, No. 2-09-104-CV, 2010 WL 1999461, *4 (Tex. App.– Forth Worth 2010, no pet.)).

AFS's response does not appear to deal with this issue specifically but instead discusses a recent case stating that attorney's fees are recoverable as a measure of economic harm suffered from another's tort. Br. Opp. Mot. Summ. J. 20, ECF No. 216 (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009)). Although the Court recognizes that attorney's fees are available in some situations, "litigation expenses, including the value of time lost due to litigation, generally are not recoverable." *Profitlife P'Ship*, 2010 WL 1999461, at *4. Therefore, the Court finds that AFS is not entitled to an award of damages for lost opportunity or productivity. Accordingly, GAIC's motion for summary judgment should be and is hereby **GRANTED** as it relates to the lost productivity claims.

### C.  Motion to Strike Counterclaim

After requesting leave of Court, AFS filed a Second Amended Counterclaim on January 3,

2011.  *See* ECF No. 180.  In that counterclaim, AFS alleged new injuries related to their extra-contractual claims including lost profits, lost productivity, and increased costs of doing business.  *See* 2d Am. Countercl. ¶ 27, ECF No. 180.  In response, GAIC filed an answer and a counterclaim pursuant to section 541.153 of the Texas Insurance Code, for a frivolous action.  Answer to 2d Am. Countercl. 10, ECF No. 184.  GAIC stated that AFS's counterclaims were groundless and brought in bad faith or for the purposes of harassment.  *Id.*  Therefore, GAIC alleges that it would seek attorney's fees for having to defend the groundless and/or fraudulent claims.  *Id.*

AFS moves to strike GAIC's counterclaim on the grounds that it was untimely filed.  AFS Mot. Strike 2, ECF No. 190.  The Court's scheduling order set a deadline of December 30, 2010 to file amended pleadings.  AFS filed its second amended counterclaim outside of that deadline and therefore requested leave of Court.  *See* ECF No. 180.  Despite now being outside the time allowed by the scheduling order, GAIC was able to file an answer to AFS's amended pleading.  Therefore, the Court finds that GAIC's answer and counterclaim were not untimely filed and **DENIES** AFS's motion to strike.

In the alternative, AFS asks for summary judgment on the issue of GAIC's counterclaim.  Mot. Strike 5, ECF No. 190.  GAIC brings a counterclaim for relief under Texas Insurance Code § 541.153 alleging that AFS's counterclaims, including its claim for attorney's fees, are groundless and brought in bad faith or brought for purposes of harassment.  Answer 2d Am. Countercl. 10, ECF No. 184.  As stated by AFS, GAIC fails to provide evidence that AFS's claims were groundless and brought in bad faith or for purposes of harassment.  GAIC's response sets out the legal basis for finding that AFS should not be awarded damages for attorney's fees, lost profits, and lost opportunity.  GAIC Resp. Mot. Strike 407, ECF No. 205.  For many of the reasons already set out,

the Court agreed with GAIC's reasoning and granted summary judgment.  However, AFS's claims

for extra-contractual damages, particularly those based on the Chase Lawsuit fees, were clearly not

groundless.  The Fifth Circuit specifically remanded the case to this Court for a determination as to

whether there was any basis for AFS's extra-contractual claims.  *Great Am. Ins.*, 612 F.3d at 808.

Therefore, the Court finds that GAIC cannot meet its burden to show that the claims were

groundless.

       If the claims are not groundless, then GAIC must show that the claims were brought for the

purposes of harassment.  GAIC argues that AFS never previously alleged that GAIC caused it to

suffer lost profits or productivity, and that the purpose of these new allegations is to create the need

for additional discovery, at great cost to GAIC.  GAIC Resp. Mot. Strike 7, ECF No. 205.  GAIC

also argues that by failing to raise the lost profits and productivity claims at trial or appeal, AFS

waived the right to bring claims alleging those damages.  *Id.* at 8.  AFS responds that the damages

from increased operating costs, lost profits, and lost productivity were difficult to quantify and

therefore not brought earlier.  AFS Reply Mot. Strike 4-5, ECF No. 217.  Although GAIC questions

the motives behind AFS's new damages claims, GAIC does not provide any evidence to show that

it will be able to prove that the amendments to AFS's counterclaim were for the purposes of

harassment or in bad faith.  Therefore, the Court finds that AFS's motion for summary judgment on

GAIC's counterclaim should be **GRANTED**.

## IV.     CONCLUSION

       For the foregoing reasons, the Court finds that GAIC's Motion for Summary Judgment (ECF

No. 188) should be and is hereby **GRANTED**.  Accordingly, it is **ORDERED** that AFS's claims

are **DISMISSED**.  The Court also finds that AFS's Motion to Strike Counterclaim should be and

is hereby **DENIED** and alternative Motion for Partial Summary Judgment should be and is hereby

**GRANTED**.  Final judgment will be entered by separate order.

      **SO ORDERED** this **27th** day of **July, 2011**.


                                                          **Reed O'Connor**

                                                          **UNITED STATES DISTRICT JUDGE**